# EXHIBIT A

**GIBSON, DUNN & CRUTCHER LLP**
James J. Farrell, (CA SBN 166595)
    JFarrell@gibsondunn.com
Diane Chan, NY SBN 5411723, *pro hac vice* pending
    DChan@gibsondunn.com
Zachary A. Kady, NY SBN 5374871, *pro hac vice* pending
    ZKady@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

**FILED**
Superior Court of California
County of Los Angeles

09/11/2023

David W. Slayton, Executive Officer / Clerk of Court

By: _____ Deputy
          N. Osollo

Attorneys for Plaintiff America Chung Nam, LLC.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| AMERICA CHUNG NAM, LLC, | CASE NO. 23STCV19358 |
| *Plaintiff,* | **UNLIMITED CIVIL ACTION** |
| v. | **FIRST AMENDED COMPLAINT FOR:** |
| MITSUI O.S.K. LINES, LTD., MOL (AMERICAS) LLC, and MOL DRYBULK, LTD., | **1.    Violations of Bus. & Prof. Code, § 17200 *et seq*.** |
| *Defendants.* | **2.    Violations of Bus. & Prof. Code, § 17500 *et seq*..** |
| | **3.    Promissory Fraud** |
| | **4.    Negligent Misrepresentation** |
| | **5.    Negligence** |
| | **6.    Unjust Enrichment** |
| | **JURY TRIAL DEMANDED** |

Plaintiff America Chung Nam, LLC ("ACN"), by and through its attorneys, hereby alleges for its First Amended Complaint against Mitsui O.S.K. Lines, Ltd., MOL (Americas) LLC and MOL Drybulk, Ltd. (together "MOL") as follows:

Electronically Received 09/11/2023 03:00 PM

Gibson, Dunn &
Crutcher LLP

## **INTRODUCTION**

1.      This case arises from the unfair, unlawful and fraudulent business practices of MOL, one of the largest ocean carrier companies in the world, and one of the few that operate a highly specialized form of carrier designed to transport wood chips.  MOL exploited its market power and the extraordinary circumstances caused by the COVID-19 pandemic to charge ACN an unconscionable price to charter MOL's wood chip vessels for transport to China, then demanded that ACN use those vessels during the height of pandemic lockdowns in China, at the risk of exposing ACN's personnel to COVID-19, and at the risk of violating China's COVID-19 restrictions.

2.      ACN is a leading exporter in the United States of recycled paper products to China.  ACN's business includes exporting wood chips to paper mills in China.

3.      In early 2021, ACN began negotiating with MOL to charter MOL's vessels for use in the export of ACN's wood chips to the Port of Dongguan in China.

4.      Prior to and during the parties' negotiations, MOL represented that it was committed to ensuring the safety of ACN's goods and personnel during the ongoing COVID-19 pandemic, complying with all applicable laws, and acting with the highest ethical standards.  MOL also represented that it would work with ACN as a customer and business partner to mitigate any challenges ACN may face as a result of the pandemic.

5.      However, MOL's conduct thereafter showed that MOL had no intention of honoring these commitments.  Far from acting with the highest ethical standards, MOL used its market power over the wood chip shipping industry, and exploited the COVID-19 pandemic, to charge ACN an unconscionable price to charter MOL's vessels.  That price was dramatically and unjustifiably higher than the price that MOL had charged prior to the pandemic, thereby violating California's laws that prohibit price gouging during a State of Emergency.  MOL insisted upon that price knowing full well that ACN had no choice but to agree due to MOL's control over the wood chip shipping market.

6.      After ACN agreed to purchase MOL's wood chip transportation services, multiple surges of COVID-19 spread across China in late 2021 and 2022.  In response to rising infection rates, the Chinese government issued laws that imposed city-wide lockdowns and mass quarantines across the country, including the city of Dongguan.  As a result, ACN could not use MOL's vessels to

2

export wood chips to China during this time because doing so risked the health and safety of ACN's personnel, and also risked violating China's "Zero-COVID-19" laws that suspended business operations and restricted the movement of people and goods in Dongguan.  Rather than work with ACN to mitigate the impact from these restrictions, as MOL had previously represented, MOL instead attempted to force ACN to use MOL's vessels during the height of pandemic lockdowns in China in violation of China's COVID-19 laws.  In doing so, MOL also revealed that its prior representations to ensure the health and safety of ACN's personnel were false.  Instead, MOL insisted that ACN use MOL's vessels, even though doing so placed ACN's personnel at risk of contracting COVID-19.

7.      In short, MOL falsely enticed ACN into business with MOL, claiming that MOL would act fairly, honestly and ethically.  Instead, MOL used its market dominance and the extraordinary circumstances of the COVID-19 pandemic to demand unconscionable rates and terms from ACN.  And when COVID surged and the Chinese government prevented ACN from conducting business activities in China, MOL insisted that ACN pay for services that were never delivered, costing ACN tens of millions of dollars.  MOL's unfair, unlawful and fraudulent business practices violate, among other things:  California's unfair competition laws set forth in section 17200 *et seq.* of the California Business and Professions Code; section 396 of the California Penal Code; and the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, and interpreted by the Federal Maritime Commission's Interpretive Rule on Demurrage and Detention Under the Shipping Act (including factors related to the reasonableness of practices and costs associated with delays caused by COVID, among other things).

## PARTIES

8.      Plaintiff America Chung Nam, LLC is a limited liability company organized and existing under the laws of the state of California, with its principal place of business located in Los Angeles County, California.

9.      Defendant Mitsui O.S.K. Lines, Limited ("Mitsui O.S.K.") is a Japanese company. Mitsui O.S.K. has subsidiaries acting as its agents in the United States and has offices throughout the country, including an office in Long Beach, California.  MOL—directly and/or through its

Gibson, Dunn & Crutcher LLP

3

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

subsidiaries—offered carrier services, including chartered use of its wood chips, to shippers in the United States, including ACN.

10.     Defendant MOL (Americas) LLC is a limited liability company organized and existing under the laws of the state of New Jersey, with its principal place of business located in Woodbridge, New Jersey.

11.     Defendant MOL Drybulk, Limited ("MOL Drybulk") is a Japanese company and a subsidiary of Mitsui O.S.K.  MOL Drybulk operates Mitsui O.S.K.'s wood chip carrier division.

## JURISDICTION AND VENUE

12.     This action falls within the unlimited civil jurisdiction of this Court because the amount in controversy exceeds $25,000, exclusive of interest, costs, and attorneys' fees.

13.     This Court has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure section 410.10 because (a) Defendants have such substantial business activities in California as to be fairly regarded as being at home in this state and (b) Defendants purposefully engaged in activities within California sufficient to constitute minimum contacts with the State of California, and this action arises out of or relates to the Defendants' contacts.

14.     Venue is proper in this Court pursuant to California Code of Civil Procedure section 395.  Plaintiff is a California limited liability company with its primary place of business in this county, and the Defendants do not reside in this state.

## FACTUAL ALLEGATIONS

15.     Founded in 1990 by Chinese entrepreneurs, ACN is a leading American exporter of fiber sources to paper mills in China and other nations, where those fiber sources are then converted into fiberboard, cardboard and packaging.  ACN sources its raw materials through exclusive relationships with recycling facilities, waste management companies, and distribution centers across the United States.

16.     On March 4, 2020, the state of California issued a Proclamation of a State of Emergency in light of the emergent COVID-19 pandemic.

Gibson, Dunn & Crutcher LLP

4

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

17.    Section 396(b) of the California Penal Code expressly prohibits entities that sell transportation and freight services from engaging in price gouging following the declaration of a national, state or local emergency:

> (b) Upon the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any county, city, or city and county, and for a period of 30 days following that proclamation or declaration, it is unlawful for a person, contractor, business, or other entity to sell or offer to sell . . . transportation, freight, and storage services . . . for a price of more than 10 percent greater than the price charged by that person for those goods or services immediately prior to the proclamation or declaration of emergency, or prior to a date set in the proclamation or declaration.

18.    On April 3, 2020, the state of California issued Executive Order N-44-20.  Paragraph 1 of Executive Order N-44-20 provides that "[a]ll prohibitions against price gouging set forth in [section 396(b) of the California Penal Code] shall be in effect through September 4, 2020."

19.    On September 3, 2020, the State of California issued Executive Order N-78-20, which extended the expiration date set forth in paragraph 1 of Executive Order N-44-20 from September 4, 2020, to March 4, 2021.

20.    California's COVID-19 State of Emergency remained in effect until February 28, 2023.

21.    On March 13, 2020, the President of the United States issued Proclamation 9994, which declared a national emergency concerning the COVID-19 pandemic.  The national emergency remained in effect until May 11, 2023.

22.    In late 2020 and early 2021, ACN began searching for an ocean carrier from which it could charter vessels to ship wood chips to China.  The wood chip transnational shipping industry is a highly specialized segment of the charter industry.  Because wood chips become unusable if they dry out, they can only be transported in temperature and humidity-controlled shipping vessels that are specially designed to transport these materials.  There are relatively few ocean carriers in the world that operate such vessels or offer them to third parties for chartered use.  MOL is the dominant ocean carrier in the wood chip vessel charter industry.  MOL's wood chip carrier business constitutes part

Gibson, Dunn & Crutcher LLP

5

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

of its larger drybulk business division, which specializes in the transportation of dry cargoes such as wood chips, iron ore and coal.

23.    As an ocean carrier, MOL is subject to the laws set forth in the Shipping Act of 1984, certain provisions of which were amended by the Ocean Shipping Reform Act of 1998, and interpreted by Rules issued by the Federal Maritime Commission ("FMC").

24.    Section 41102(c) of the Shipping Act provides:

> (c) Practices in handling property.--A common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property.

46 U.S.C. § 41102(c).  The FMC's Rule interpreting the required elements of section 41102(c) is codified as 46 C.F.R. § 545.4. The FMC's Rule interpreting 46 U.S.C. § 41102(c) in the context of demurrage and detention fees is codified as 46 C.F.R. § 545.5.

25.    Section 41102(d)(2)(B) of the Shipping Act provides:

> (d) Retaliation and other discriminatory actions.--A common carrier, marine terminal operator, or ocean transportation intermediary, acting alone or in conjunction with any other person, directly or indirectly, may not . . . resort to any other unfair or unjustly discriminatory action for . . . any . . . reason.

46 U.S.C. § 41102(d)(2)(B).

26.    In 2021, MOL was one of the largest ocean carriers of wood chips and had control over the wood chip shipping market.  Notwithstanding its dominant market position, MOL's drybulk business suffered significant economic losses in 2020 as a result of a decreased demand for drybulk vessels and transportation services during the pandemic.

27.    In January 2021, ACN began negotiating to purchase MOL's services to transport ACN's wood chips to the Port of Dongguan in China.  At that time, MOL was essentially the only carrier with wood chip vessels available for ACN to use.

28.    To entice ACN to do business with MOL, MOL represented that it had the expertise to ship ACN's goods to China.  MOL promoted its services by claiming that it operated "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

Gibson, Dunn &
Crutcher LLP

carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

29.    MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."  Those representations were part of an aggressive campaign by MOL to restore the company's image following the collisions of two of its vessels, the first of which—the *Nippon Maru*—collided with a U.S. Naval Base in Guam, causing millions of dollars in damages, and the second of which—the *Wakashio*—ran aground off the coast of Mauritius, causing one of the worst oil spills and environmental disasters in Mauritius' history.

30.    In an effort to reassure its current and potential customers following these incidents, MOL publicly touted its values with, among other representations, the acronym "CHARTS," which includes:

> **H**onest -- Do the right thing.  Keep compliance as a Top Priority.  Ensure that actions comply with social norms and the highest ethical standards.
>
> **A**ccountability -- Commit to acting with a sense of ownership.  Tackle tasks with a sense of ownership and in cooperation with stakeholders.
>
> **R**eliability -- Gain the trust of stakeholders.  See things from the customers' perspective, and deliver service that exceeds their expectations.  Seize the initiative in social issues and take responsibility for your behavior.
> . . . .
> **S**afety -- Pursue the world's highest level of safety culture.  Maintain a safety-first attitude and strive to reinforce safety awareness.  Return to basics by comprehending workplace safety.

31.    MOL also advertised that its "compl[iance] with laws and international rules" was a "[r]esponsibility [that MOL] [f]ulfilled" with its customers.

32.    As the pandemic unfolded, MOL doubled down on these representations by repeatedly issuing press releases to reassure its current and prospective customers (described as business partners) of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers and/or business partners that MOL would work with them to mitigate any issue caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020,

Gibson, Dunn & Crutcher LLP

7

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

MOL issued press releases stating that the company "mak[es] its top priority the health and safety of customers . . . ." On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company." The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation." On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority . . . to ensur[ing] the safety of its officers, employees and related parties," "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties." On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority . . . to ensur[ing] the safety of its officers, employees and related parties." Those press release also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

33.     During the course of the parties' negotiations, MOL insisted that it charge ACN a dramatically higher price to charter MOL's wood chip vessels than MOL had charged prior to the pandemic. The increase in MOL's price could not have been directly attributable to any additional costs associated with labor or material used to provide the wood chip vessels to ACN for chartered use.

34.     Believing MOL's representations related to its commitment to safety and cooperation, as well as believing MOL's representations that its price was the fair market rate, ACN agreed to purchase MOL's transportation services.

35.     That agreement charged ACN an unconscionable price, totaling nearly $45 million, to charter MOL's wood chip vessels.

36.     Upon information and belief, MOL brazenly exploited its dominant position in the market for wood chip vessels to artificially inflate the price it charged ACN. MOL did so in order to recoup the financial losses it suffered to its drybulk business during the pandemic, knowing full well

Gibson, Dunn & Crutcher LLP

8

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

that ACN urgently needed to charter a wood chip vessel as soon as possible in order to itself avoid severe economic losses.

37.    This type of market manipulation has long been a centerpiece of MOL's business playbook.  For decades, MOL has been the target of a number of regulatory actions in countries around the world that have accused MOL of engaging in illegal price fixing and other violations of antitrust laws.  For example, between 2015 and 2017, regulatory agencies in the United States, China, Mexico, India, South Korea, and Peru, among other countries, fined MOL and other ocean carriers after finding that these carriers had colluded to raise the rates on shipments of cars, trucks, and construction machinery across five shipping routes for a period of at least four years, in violation of each country's antitrust laws.  In 2000, the European Commission fined MOL and other carriers for entering into an agreement not to offer discounts from their published tariffs.  In 2014, MOL's affiliate, MOL Logistics (Japan) Co. Ltd., agreed to plead guilty and to pay a $1.84 million criminal fine for its role in a conspiracy to fix certain fees in connection with the provision of air freight services from Japan to the United States.

38.    In the months following July 2021, COVID-19 cases surged around the world, and in China in particular.  In an effort to stem the rising tide of infections, and in accordance with its "Zero-COVID-19" policy, the Chinese government began to expand its use of city-wide lockdowns and mass quarantines that required businesses to shut down and severely restricted the movement of people and goods.  The extent to which such stringent measures were employed was both arbitrary and unpredictable.  Such measures also severely impacted the continued operation of China's ports and businesses.  For example, in August 2021, the Chinese government terminated all inbound and outbound services at the Meishan terminal at the Port of Ningbo-Zhoushan—the third busiest port in the world—until further notice after a single worker at the port tested positive for COVID-19.  And even when the ports were allowed to continue to operate, restrictions on movement prevented ships from offloading cargo because truck drivers were prohibited from travelling to and from the loading docks.

39.    In March 2022, the Chinese government issued a policy that imposed a city-wide lockdown on Dongguan.  This policy ordered businesses in areas reporting local cases to stop

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

production.  The policy also ordered employees of businesses to work from home and locked down residential areas, permitting only necessary activities such as buying groceries and taking virus tests. Strict testing requirements for truck drivers also prevented the transport of goods to and from loading docks.  In light of these restrictions, ACN was unable to transport its wood chips to the Port of Dongguan, without potentially violating China's COVID-19 laws.

40.    Given the unpredictable state of China's COVID-19 policies, and the ever-present threat that a renewed surge in infections would prompt another city-wide lockdown, ACN remained at risk of violating China's COVID-19 laws throughout the relevant time period.

41.    Furthermore, any shipments made by ACN during this time period would have endangered the health and safety of its personnel by exposing them to the COVID-19 virus.

42.    Against this backdrop, ACN halted any attempts to use MOL's vessels to transport wood chips to China.  ACN had several discussions with MOL with respect to suspending MOL's services because it was impossible to use MOL's vessels without violating Chinese laws and putting ACN's personnel at risk.  Given MOL's repeated statements during and prior to the pandemic that it was committed to ensuring the "health and safety of [its] customers," and that it would "take all possible measures not to cause any inconvenience to [its] business partners," ACN had been misled into believing the truth of these representations.  Indeed, MOL had reiterated these exact statements as recently as October 1, 2021, a few months before China imposed a city-wide lockdown on Dongguan.  ACN therefore believed that MOL would be willing to work together to devise a way forward that would ensure the safety of ACN's goods and personnel, comply with all applicable laws, and charge ACN a fair market price for MOL's services.

43.    Instead, the opposite proved to be true.  MOL insisted that it was entitled to the entire $45 million it charged ACN to use its vessels, even though that price was unconscionable.  MOL also revealed that its prior commitments to prioritize the safety of ACN's personnel during the pandemic, and to refrain from causing further inconvenience to ACN, were no more than empty words.  Indeed, MOL insisted that ACN continue to pay for MOL's services, thereby forcing ACN into an impossible Catch-22:  ACN could either refrain from using MOL's vessels in order to protect the health and safety of its personnel, but lose millions of dollars in unrecouped charter fees by doing so, or ACN

Gibson, Dunn & Crutcher LLP

10

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

could use MOL's vessels to transport its wood chips to China, and in doing so, endanger the health and safety of its personnel and risk violating China's COVID-19 laws.  After MOL refused to honor its earlier representations and after ACN paid MOL an inflated price for shipping services that were never provided, ACN was forced to seek this remedy for MOL's unfair, unlawful and fraudulent business practices in violation of, among other things, section 396 of the California Penal Code, sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, and sections 17200 *et seq.* and 17500 of the California Business and Professions Code.

### FIRST CAUSE OF ACTION

**Unfair Competition Pursuant to Bus. & Prof. Code § 17200 *et seq.***

44.    ACN incorporates the foregoing allegations as if fully set forth herein.

45.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

46.    MOL fraudulently induced ACN to purchase MOL's services.  MOL also charged and continues to charge ACN an unconscionable price to charter MOL's wood chip vessels even though ACN could not use those vessels without risking the health and safety of its personnel, and risking violations of China's COVID-19 restrictions.  MOL's conduct as alleged herein constitutes unfair business acts that are immoral, unethical, oppressive, unscrupulous, and substantially injurious to ACN.  ACN was harmed as a result of MOL's unfair conduct. That harm was not outweighed by any countervailing benefits to ACN or competition, and was not something that ACN could have reasonably avoided.

47.    This conduct also constitutes unlawful business acts.  MOL violated section 396 of the California Penal Code by offering to sell its transportation / freight services to ACN at a price that was more than 10% greater than the price MOL charged for those services prior to March 2020.  The higher price charged by MOL was not directly attributable to additional costs imposed on MOL by any third-party supplier, and not directly attributable to additional costs for labor or materials used to provide these services during the state of emergency in California and in the United States.  This higher price was more than 10 percent greater than the total cost to MOL plus the markup

Gibson, Dunn & Crutcher LLP

11

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

customarily applied by MOL for these services in the usual course of business immediately prior to the onset of the state of emergency in California and the United States.

48.    In engaging in the aforementioned conduct, MOL also unfairly and unjustly failed to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property, in violation of sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, as amended by the Ocean Reform Act of 1998, and as interpreted by the FMC's interpretative rules.

49.    MOL's conduct as alleged herein also constitutes fraudulent business practices.  MOL engaged in unfair, deceptive, untrue, and misleading advertising when it represented that MOL had the expertise to ship ACN's goods to China.  MOL's marketing materials stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

50.    MOL also engaged in unfair, deceptive, untrue, and misleading advertising when it marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."  MOL also publicly touted its values with, among other representations, the acronym "CHARTS," as described herein.  MOL also repeatedly issued press releases to reassure its current and prospective customers / business partners of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers / business partners that MOL would work with them to mitigate any inconvenience caused by the pandemic.

51.    ACN relied upon MOL's fraudulent advertising when it agreed to purchase MOL's services.  MOL's fraudulent advertising was likely to mislead a reasonable person and members of the public.

Gibson, Dunn &
Crutcher LLP

12

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED
ET AL.

52.    ACN was harmed as a direct result of MOL's unfair, unlawful, and fraudulent business practices because ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

53.    ACN is entitled to equitable relief and restitution in an amount to be determined at trial.

### SECOND CAUSE OF ACTION

**False and Misleading Statements Pursuant to Bus. & Prof. Code § 17500 *et seq.***

54.     ACN incorporates the foregoing allegations in paragraphs 1 - 41 as if fully set forth herein.

55.    Among other things, California Business and Professions Code § 17500 prohibits any making any false or misleading statement in connection with the promotion of the sale of any services.

56.    MOL has made, and continues to make, false and misleading statements in connection with the promotion of its services, including MOL's claims that:

    a.    It operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

    b.    It had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation" including its publicly touted values reflected in the acronym "CHARTS," as described herein.

    c.    It is committed to maintaining safe operations during the pandemic, and it would work with cutomers to mitigate any inconvenience caused by the pandemic.

Gibson, Dunn & Crutcher LLP

13

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

d.    It observes and enforces just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property, which includes complying with all applicable laws, including California Penal Code section 396 and sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, as amended by the Ocean Reform Act of 1998, and as interpreted by the FMC's interpretative rules.

e.    Its "compl[iance] with laws and international rules" was a "[r]esponsibility [that MOL] [f]ulfilled" with its customers.

57.    ACN, and other California residents, rely on MOL's fraudulent advertising when agreeing to purchase MOL's services.  MOL's false and misleading advertising was likely to mislead a reasonable person and members of the public.

58.    ACN was harmed as a direct result of MOL's false and misleading statements as alleged herein.

59.    ACN is entitled to equitable relief, including public injunctive relief, and restitution in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Promissory Fraud**

60.    ACN incorporates the foregoing allegations in paragraphs 1–41 as if fully set forth herein.

61.    ACN agreed to purchase MOL's transportation / freight services in 2021 based on MOL's promises.

62.    In order to induce ACN to purchase its services, MOL represented that it had the expertise to ship ACN's goods to China.  In marketing its services, MOL's materials stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in

Gibson, Dunn & Crutcher LLP

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

63.     MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."

64.     MOL also touted its values with, among other representations, the acronym "CHARTS," as described herein.

MOL also advertised that its "compl[iance] with laws and international rules" was a "[r]esponsibility [that MOL] [f]ulfilled" with its customers.

65.     MOL also repeatedly issued press releases to reassure its current and prospective customers (including ACN) of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers / business partners that MOL would work with them to mitigate any inconvenience caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020, MOL issued press releases stating that the company "mak[es] its top priority and the health and safety of customers . . . ."  On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company."  The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation."  On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority and to ensure the safety of its officers, employees and related parties" and "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties."  On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority and to ensure the safety of its officers, employees and related parties."  Those press releases also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

66.     MOL did not intend to uphold any of these promises when MOL made them.

Gibson, Dunn & Crutcher LLP

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

67.     MOL intended for ACN to rely on these promises.

68.     ACN reasonably relied on these promises when it agreed to purchase MOL's services.

69.     After ACN agreed to purchase MOL's services, MOL failed to uphold these promises by insisting that ACN use MOL's wood chip vessels during the height of pandemic lockdowns in China, in potential violation of China's COVID-19 restrictions.  MOL also failed to uphold these promises when it continued to charge ACN an unconscionable price to charter MOL's vessels, when it was impossible for ACN to do so without the risk of endangering its personnel or violating China's COVID-19 restrictions.

70.     ACN was harmed a result of MOL's conduct because, among other things, ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

71.     ACN's reliance on MOL's promises is a substantial factor in causing ACN's harm. ACN is entitled to equitable relief and damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Negligent Misrepresentation

72.     ACN incorporates the foregoing allegations in paragraphs 1 – 41 as if fully set forth herein.

73.     MOL represented to ACN that it had the expertise to ship ACN's goods to China. MOL's corporate brochure stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

74.     MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."

Gibson, Dunn &
Crutcher LLP

16

75.    MOL also touted its values with, among other representations, the acronym "CHARTS," as described herein.

MOL also advertised that its "compl[iance] with laws and international rules" was a "[r]esponsibility [that MOL] [f]ulfilled" with its customers.

76.    MOL also repeatedly issued press releases to reassure its current and prospective customers (including ACN) of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers (referred to as "business partners") that MOL would work with them to mitigate any inconvenience caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020, MOL issued press releases stating that the company "mak[es] its top priority and the health and safety of customers . . . ."  On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company."  The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation."  On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority and to ensure the safety of its officers, employees and related parties" and "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties."  On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority and to ensure the safety of its officers, employees and related parties."  Those press release also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

77.    MOL's aforementioned representations were not true.  Contrary to these representations, MOL insisted that ACN use MOL's wood chip vessels during the height of pandemic lockdowns in China, in potential violation of China's COVID-19 restrictions.  MOL also continued to charge ACN an unconscionable price to charter MOL's vessels, when it was impossible for ACN to do so without the risk of endangering its personnel or violating China's COVID-19 restrictions.

Gibson, Dunn & Crutcher LLP

17

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

78.    MOL owed ACN a duty not to make these misrepresentations because they were conveyed in a commercial setting for business purposes, and MOL was a party to a business transaction with ACN.

79.    MOL had no reasonable grounds to believe these misrepresentations were true when it made them.

80.    MOL made these misrepresentations with the intent that ACN rely on them.

81.    ACN reasonably relied on these misrepresentations.

82.    ACN was harmed a result of MOL's conduct because, among other things, it was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

83.    ACN's reliance on MOL's misrepresentations is a substantial factor in causing ACN's harm.

84.    ACN is entitled to equitable relief and damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Negligence

85.    ACN incorporates the foregoing allegations in paragraph 1–41 as if fully set forth herein.

86.    MOL owed ACN a duty to act fairly and reasonably in compliance with standard business practices in the shipping industry, and the laws of California and the United States, including, among other things, section 396 of the California Penal Code; sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, as amended by the Ocean Reform Act of 1998, and as interpreted by the FMC's interpretative rules; and section 17200 *et seq.* of the California Business and Professions Code.

87.    MOL breached that duty of care by charging ACN an unconscionable fee to charter MOL's wood chip vessels, and by insisting that ACN use those vessels at the risk of endangering ACN's personnel and at the risk of violating COVID-19 restrictions in China.  MOL's violation of law in connection with the conduct described herein constitutes negligence per se.

Gibson, Dunn & Crutcher LLP

18

88.     ACN was harmed as a result of MOL's conduct because, among other things, ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

89.     ACN is entitled to compensatory damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

90.     ACN incorporates the foregoing allegations in paragraphs 1–41 as if fully set forth herein.

91.     ACN paid MOL for MOL to provide transportation / freight services.

92.     ACN could not use those transportation / freight services for the reasons alleged herein.

93.     It is unjust and unfair for MOL to retain ACN's payments for MOL's services, when MOL did not provide any service to ACN and ACN could not use those services for the reasons alleged herein.

94.     ACN is entitled to restitution in an amount to be determined at trial

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment for Plaintiff and against Defendants, as follows:

A.     For compensatory damages in an amount to be proven at trial;

B.     For restitution in an amount to be proven at trial;

C.     For equitable relief, including an injunction prohibiting MOL from continuing to demand performance of its unconscionable agreement for shipping services and its related unfair and unlawful business practices;

D.     For a public injunction prohibiting MOL's ongoing false and deceptive conduct;

E.     For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law;

F.     For an award of costs;

G.     For an award of reasonable attorneys' fees; and

H.     For any and all other relief the Court deems just and proper.

Gibson, Dunn & Crutcher LLP

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

1

2     DATED: September 11, 2023          GIBSON, DUNN & CRUTCHER LLP
                                          JAMES J. FARRELL
3                                         DIANE CHAN
                                          ZACHARY A. KADY
4

5

6                                         By:_____/s/ *James J. Farrell*_____
                                                     James J. Farrell
7
                                          *Attorneys for Plaintiff America Chung Nam, LLC*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

20

FIRST AMENDED COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED ET AL.

# EXHIBIT B

**SUM-100**

# SUMMONS on First Amended Complaint
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Mitsui O.S.K. Lines, Ltd., MOL (Americas) LLC and MOL Drybulk, Ltd.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

America Chung Nam, LLC

**Electronically FILED by
Superior Court of California,
County of Los Angeles
9/11/2023 6:16 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Marks, Deputy Clerk**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012

| CASE NUMBER: *(Número de Caso):* |
|---|
| 23STCV19358 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James J. Farrell, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, (212) 351-4000

DATE:                                          Clerk, by David W. Slayton, Executive Officer/Clerk of Court , Deputy
*(Fecha)*  09/11/2023              *(Secretario)*          Y. Marks               *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

# EXHIBIT C

1

**GIBSON, DUNN & CRUTCHER LLP**
James J. Farrell, (CA SBN 166595)
2   JFarrell@gibsondunn.com
Diane Chan, NY SBN 5411723, *pro hac vice* pending
3   DChan@gibsondunn.com
Zachary A. Kady, NY SBN 5374871, *pro hac vice* pending
4   ZKady@gibsondunn.com
200 Park Avenue
5   New York, NY 10166-0193
Telephone: (212) 351-4000
6   Facsimile: (212) 351-4035

7   Attorneys for Plaintiff America Chung Nam, LLC.

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/14/2023 4:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

8

9                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **FOR THE COUNTY OF LOS ANGELES**

11

12   AMERICA CHUNG NAM, LLC,              CASE NO. 23STCV19358

13            *Plaintiff,*                **UNLIMITED CIVIL ACTION**

14       v.                                **COMPLAINT FOR:**

15   MITSUI O.S.K. Lines, LTD. and MOL     **1.   Violations of Bus. & Prof. Code, § 17200**
     (Americas) LLC,                            ***et seq.***
16
              *Defendants.*               **2.   Promissory Fraud**
17
                                          **3.   Negligent Misrepresentation**
18
                                          **4.   Negligence**
19
                                          **5.   Unjust Enrichment**
20
                                          <u>**JURY TRIAL DEMANDED**</u>
21

22       Plaintiff America Chung Nam, LLC ("ACN"), by and through its attorneys, hereby alleges for

23   its complaint against Mitsui O.S.K. Lines, Ltd. and MOL (Americas) LLC (together "MOL") as

24   follows:

25                          **<u>INTRODUCTION</u>**

26       1.      This case arises from the unfair, unlawful and fraudulent business practices of MOL,

27   one of the largest ocean carrier companies in the world, and one of the few that operate a highly

28   specialized form of carrier designed to transport wood chips.  MOL exploited its market power and

the extraordinary circumstances caused by the COVID-19 pandemic to charge ACN an unconscionable price to charter MOL's wood chip vessels for transport to China, then demanded that ACN use those vessels during the height of pandemic lockdowns in China, at the risk of exposing ACN's personnel to COVID-19, and at the risk of violating China's COVID-19 restrictions.

2.      ACN is a leading exporter in the United States of recycled paper products to China. ACN's business includes exporting wood chips to paper mills in China.

3.      In early 2021, ACN began negotiating with MOL to charter MOL's vessels for use in the export of ACN's wood chips to the Port of Dongguan in China.

4.      Prior to and during the parties' negotiations, MOL represented that it was committed to ensuring the safety of ACN's goods and personnel during the ongoing COVID-19 pandemic, complying with all applicable laws, and acting with the highest ethical standards.  MOL also represented that it would work with ACN as a customer and business partner to mitigate any challenges ACN may face as a result of the pandemic.

5.      However, MOL's conduct thereafter showed that MOL had no intention of honoring these commitments.  Far from acting with the highest ethical standards, MOL used its market power over the wood chip shipping industry, and exploited the COVID-19 pandemic, to charge ACN an unconscionable price to charter MOL's vessels.  That price was dramatically and unjustifiably higher than the price that MOL had charged prior to the pandemic, thereby violating California's laws that prohibit price gouging during a State of Emergency.  MOL insisted upon that price knowing full well that ACN had no choice but to agree due to MOL's control over the wood chip shipping market.

6.      After ACN agreed to purchase MOL's wood chip transportation services, multiple surges of COVID-19 spread across China in late 2021 and 2022.  In response to rising infection rates, the Chinese government issued laws that imposed city-wide lockdowns and mass quarantines across the country, including the city of Dongguan.  As a result, ACN could not use MOL's vessels to export wood chips to China during this time because doing so risked the health and safety of ACN's personnel, and also risked violating China's "Zero-COVID-19" laws that suspended business operations and restricted the movement of people and goods in Dongguan.  Rather than work with ACN to mitigate the impact from these restrictions, as MOL had previously represented, MOL

instead attempted to force ACN to use MOL's vessels during the height of pandemic lockdowns in China in violation of China's COVID-19 laws.  In doing so, MOL also revealed that its prior representations to ensure the health and safety of ACN's personnel were false.  Instead, MOL insisted that ACN use MOL's vessels, even though doing so placed ACN's personnel at risk of contracting COVID-19.

7.     In short, MOL falsely enticed ACN into business with MOL, claiming that MOL would act fairly, honestly and ethically.  Instead, MOL used its market dominance and the extraordinary circumstances of the COVID-19 pandemic to demand unconscionable rates and terms from ACN.  And when COVID surged and the Chinese government prevented ACN from conducting business activities in China, MOL insisted that ACN pay for services that were never delivered, costing ACN tens of millions of dollars.  MOL's unfair, unlawful and fraudulent business practices violate, among other things:  California's unfair competition laws set forth in section 17200 *et seq.* of the California Business and Professions Code; section 396 of the California Penal Code; and the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, and interpreted by the Federal Maritime Commission's Interpretive Rule on Demurrage and Detention Under the Shipping Act (including factors related to the reasonableness of practices and costs associated with delays caused by COVID, among other things).

## **PARTIES**

8.     Plaintiff America Chung Nam, LLC is a limited liability company organized and existing under the laws of the state of California, with its principal place of business located in Los Angeles County, California.

9.     Defendant Mitsui O.S.K. Lines, Limited is a Japanese company.  MOL has subsidiaries acting as its agents in the United States and has offices throughout the country, including an office in Long Beach, California.  MOL—directly and/or through its subsidiaries—offered carrier services, including chartered use of its wood chips, to shippers in the United States, including ACN.

10.     Defendant MOL (Americas) LLC is a limited liability company organized and existing under the laws of the state of New Jersey, with its principal place of business located in Woodbridge, New Jersey.

**JURISDICTION AND VENUE**

11.    This action falls within the unlimited civil jurisdiction of this Court because the amount in controversy exceeds $25,000, exclusive of interest, costs, and attorneys' fees.

12.    This Court has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure section 410.10 because (a) Defendants have such substantial business activities in California as to be fairly regarded as being at home in this state and (b) Defendants purposefully engaged in activities within California sufficient to constitute minimum contacts with the State of California, and this action arises out of or relates to the Defendants' contacts.

13.    Venue is proper in this Court pursuant to California Code of Civil Procedure section 395.  Plaintiff is a California limited liability company with its primary place of business in this county, and the Defendants do not reside in this state.

**FACTUAL ALLEGATIONS**

14.    Founded in 1990 by Chinese entrepreneurs, ACN is a leading American exporter of fiber sources to paper mills in China and other nations, where those fiber sources are then converted into fiberboard, cardboard and packaging.  ACN sources its raw materials through exclusive relationships with recycling facilities, waste management companies, and distribution centers across the United States.

15.    On March 4, 2020, the state of California issued a Proclamation of a State of Emergency in light of the emergent COVID-19 pandemic.

16.    Section 396(b) of the California Penal Code expressly prohibits entities that sell transportation and freight services from engaging in price gouging following the declaration of a national, state or local emergency:

> (b) Upon the proclamation of a state of emergency declared by the President of the United States or the Governor, or upon the declaration of a local emergency by an official, board, or other governing body vested with authority to make that declaration in any county, city, or city and county, and for a period of 30 days following that proclamation or declaration, it is unlawful for a person, contractor, business, or other entity to sell or offer to sell . . . transportation, freight, and storage services . . . for a price of more than 10 percent greater than the price charged by that person for those goods or services immediately prior to the proclamation or declaration of emergency, or prior to a date set in the proclamation or declaration.

17.     On April 3, 2020, the state of California issued Executive Order N-44-20.  Paragraph 1 of Executive Order N-44-20 provides that "[a]ll prohibitions against price gouging set forth in [section 396(b) of the California Penal Code] shall be in effect through September 4, 2020."

18.     On September 3, 2020, the State of California issued Executive Order N-78-20, which extended the expiration date set forth in paragraph 1 of Executive Order N-44-20 from September 4, 2020, to March 4, 2021.

19.     California's COVID-19 State of Emergency remained in effect until February 28, 2023.

20.     On March 13, 2020, the President of the United States issued Proclamation 9994, which declared a national emergency concerning the COVID-19 pandemic.  The national emergency remained in effect until May 11, 2023.

21.     In late 2020 and early 2021, ACN began searching for an ocean carrier from which it could charter vessels to ship wood chips to China.  The wood chip transnational shipping industry is a highly specialized segment of the charter industry.  Because wood chips become unusable if they dry out, they can only be transported in temperature and humidity-controlled shipping vessels that are specially designed to transport these materials.  There are relatively few ocean carriers in the world that operate such vessels or offer them to third parties for chartered use.  MOL is the dominant ocean carrier in the wood chip vessel charter industry.

22.     As an ocean carrier, MOL is subject to the laws set forth in the Shipping Act of 1984, certain provisions of which were amended by the Ocean Shipping Reform Act of 1998, and interpreted by Rules issued by the Federal Maritime Commission ("FMC").

23.     Section 41102(c) of the Shipping Act provides:

> (c) Practices in handling property.--A common carrier, marine terminal operator, or ocean transportation intermediary may not fail to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property.

46 U.S.C. § 41102(c).  The FMC's Rule interpreting the required elements of section 41102(c) is codified as 46 C.F.R. § 545.4. The FMC's Rule interpreting 46 U.S.C. § 41102(c) in the context of demurrage and detention fees is codified as 46 C.F.R. § 545.5.

24.     Section 41102(d)(2)(B) of the Shipping Act provides:

>  (d) Retaliation and other discriminatory actions.--A common carrier, marine terminal operator, or ocean transportation intermediary, acting alone or in conjunction with any other person, directly or indirectly, may not . . . resort to any other unfair or unjustly discriminatory action for . . . any . . . reason.

46 U.S.C. § 41102(d)(2)(B).

25.     In 2021, MOL was one of the largest ocean carrier of wood chips and had control over the wood chip shipping market.

26.     In January 2021, ACN began negotiating to purchase MOL's services to transport ACN's wood chips to the Port of Dongguan in China.  At that time, MOL was essentially the only carrier with wood chip vessels available for ACN to use.

27.     To entice ACN to do business with MOL, MOL represented that it had the expertise to ship ACN's goods to China.  MOL promoted its services by claiming that it operated "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

28.     MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."  In fact, MOL publicly touted its values with, among other representations, the acronym "CHARTS," which includes:

>  **H**onest -- Do the right thing.  Keep compliance as a Top Priority.  Ensure that actions comply with social norms and the highest ethical standards.
>
>  **A**ccountability -- Commit to acting with a sense of ownership.  Tackle tasks with a sense of ownership and in cooperation with stakeholders.
>
>  **R**eliability -- Gain the trust of stakeholders.  See things from the customers' perspective, and deliver service that exceeds their expectations.  Seize the initiative in social issues and take responsibility for your behavior.
>  . . . .

**S**afety -- Pursue the world's highest level of safety culture.  Maintain a safety-first attitude and strive to reinforce safety awareness.  Return to basics by comprehending workplace safety.

29.     As the pandemic unfolded, MOL doubled down on these representations by repeatedly issuing press releases to reassure its current and prospective customers (described as business partners) of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers and/or business partners that MOL would work with them to mitigate any issue caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020, MOL issued press releases stating that the company "mak[es] its top priority the health and safety of customers . . . ."  On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company."  The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation."  On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority . . . to ensur[ing] the safety of its officers, employees and related parties," "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties."  On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority . . . to ensur[ing] the safety of its officers, employees and related parties."  Those press release also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

30.     During the course of the parties' negotiations, MOL insisted that it charge ACN a dramatically higher price to charter MOL's wood chip vessels than MOL had charged prior to the pandemic.  The increase in MOL's price could not have been directly attributable to any additional costs associated with labor or material used to provide the wood chip vessels to ACN for chartered use.

31.     Believing MOL's representations related to its commitment to safety and cooperation, as well as believing MOL's representations that its price was the fair market rate, ACN agreed to purchase MOL's transportation services.

32.     That agreement charged ACN an unconscionable price, totaling nearly $45 million, to charter MOL's wood chip vessels.

33.     Upon information and belief, MOL brazenly exploited its dominant position in the market for wood chip vessels to artificially inflate the price it charged ACN.  MOL did so knowing full well that ACN urgently needed to charter a wood chip vessel as soon as possible in order to avoid severe economic losses.

34.     This type of market manipulation has long been a centerpiece of MOL's business playbook.  For decades, MOL has been the target of a number of regulatory actions in countries around the world that have accused MOL of engaging in illegal price fixing and other violations of antitrust laws.  For example, between 2015 and 2017, regulatory agencies in the United States, China, Mexico, India, South Korea, and Peru, among other countries, fined MOL and other ocean carriers after finding that these carriers had colluded to raise the rates on shipments of cars, trucks, and construction machinery across five shipping routes for a period of at least four years, in violation of each country's antitrust laws.  In 2000, the European Commission fined MOL and other carriers for entering into an agreement not to offer discounts from their published tariffs.  In 2014, MOL's affiliate, MOL Logistics (Japan) Co. Ltd., agreed to plead guilty and to pay a $1.84 million criminal fine for its role in a conspiracy to fix certain fees in connection with the provision of air freight services from Japan to the United States.

35.     In the months following July 2021, COVID-19 cases surged around the world, and in China in particular.  In an effort to stem the rising tide of infections, and in accordance with its "Zero-COVID-19" policy, the Chinese government began to expand its use of city-wide lockdowns and mass quarantines that required businesses to shut down and severely restricted the movement of people and goods.  The extent to which such stringent measures were employed was both arbitrary and unpredictable.  Such measures also severely impacted the continued operation of China's ports and businesses.  For example, in August 2021, the Chinese government terminated all inbound and

outbound services at the Meishan terminal at the Port of Ningbo-Zhoushan—the third busiest port in the world—until further notice after a single worker at the port tested positive for COVID-19.  And even when the ports were allowed to continue to operate, restrictions on movement prevented ships from offloading cargo because truck drivers were prohibited from travelling to and from the loading docks.

36.     In March 2022, the Chinese government issued a policy that imposed a city-wide lockdown on Dongguan.  This policy ordered businesses in areas reporting local cases to stop production.  The policy also ordered employees of businesses to work from home and locked down residential areas, permitting only necessary activities such as buying groceries and taking virus tests.  Strict testing requirements for truck drivers also prevented the transport of goods to and from loading docks.  In light of these restrictions, ACN was unable to transport its wood chips to the Port of Dongguan, without potentially violating China's COVID-19 laws.

37.     Given the unpredictable state of China's COVID-19 policies, and the ever-present threat that a renewed surge in infections would prompt another city-wide lockdown, ACN remained at risk of violating China's COVID-19 laws throughout the relevant time period.

38.     Furthermore, any shipments made by ACN during this time period would have endangered the health and safety of its personnel by exposing them to the COVID-19 virus.

39.     Against this backdrop, ACN halted any attempts to use MOL's vessels to transport wood chips to China.  ACN had several discussions with MOL with respect to suspending MOL's services because it was impossible to use MOL's vessels without violating Chinese laws and putting ACN's personnel at risk.  Given MOL's repeated statements during and prior to the pandemic that it was committed to ensuring the "health and safety of [its] customers," and that it would "take all possible measures not to cause any inconvenience to [its] business partners," ACN had been misled into believing the truth of these representations.  Indeed, MOL had reiterated these exact statements as recently as October 1, 2021, a few months before China imposed a city-wide lockdown on Dongguan.  ACN therefore believed that MOL would be willing to work together to devise a way forward that would ensure the safety of ACN's goods and personnel, comply with all applicable laws, and charge ACN a fair market price for MOL's services.

40.     Instead, the opposite proved to be true.  MOL insisted that it was entitled to the entire $45 million it charged ACN to use its vessels, even though that price was unconscionable.  MOL also revealed that its prior commitments to prioritize the safety of ACN's personnel during the pandemic, and to refrain from causing further inconvenience to ACN, were no more than empty words.  Indeed, MOL insisted that ACN continue to pay for MOL's services, thereby forcing ACN into an impossible Catch-22:  ACN could either refrain from using MOL's vessels in order to protect the health and safety of its personnel, but lose millions of dollars in unrecouped charter fees by doing so, or ACN could use MOL's vessels to transport its wood chips to China, and in doing so, endanger the health and safety of its personnel and risk violating China's COVID-19 laws.  After MOL refused to honor its earlier representations and after ACN paid MOL an inflated price for shipping services that were never provided, ACN was forced to seek this remedy for MOL's unfair, unlawful and fraudulent business practices in violation of, among other things, section 396 of the California Penal Code, sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, and section 17200 *et seq.* of the California Business and Professions Code.

## FIRST CAUSE OF ACTION

### Unfair Competition Pursuant to Bus. & Prof. Code § 17200 *et seq.*

41.     ACN incorporates the foregoing allegations as if fully set forth herein.

42.     California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

43.     MOL fraudulently induced ACN to purchase MOL's services.  MOL also charged and continues to charge ACN an unconscionable price to charter MOL's wood chip vessels even though ACN could not use those vessels without risking the health and safety of its personnel, and risking violations of China's COVID-19 restrictions.  MOL's conduct as alleged herein constitutes unfair business acts that are immoral, unethical, oppressive, unscrupulous, and substantially injurious to ACN.  ACN was harmed as a result of MOL's unfair conduct. That harm was not outweighed by any countervailing benefits to ACN or competition, and was not something that ACN could have reasonably avoided.

Gibson, Dunn &
Crutcher LLP

44.     This conduct also constitutes unlawful business acts.  MOL violated section 396 of the California Penal Code by offering to sell its transportation / freight services to ACN at a price that was more than 10% greater than the price MOL charged for those services prior to March 2020.  The higher price charged by MOL was not directly attributable to additional costs imposed on MOL by any third-party supplier, and not directly attributable to additional costs for labor or materials used to provide these services during the state of emergency in California and in the United States.  This higher price was more than 10 percent greater than the total cost to MOL plus the markup customarily applied by MOL for these services in the usual course of business immediately prior to the onset of the state of emergency in California and the United States.

45.     In engaging in the aforementioned conduct, MOL also unfairly and unjustly failed to establish, observe, and enforce just and reasonable regulations and practices relating to or connected with receiving, handling, storing, or delivering property, in violation of sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, as amended by the Ocean Reform Act of 1998, and as interpreted by the FMC's interpretative rules.

46.     MOL's conduct as alleged herein also constitutes fraudulent business practices.  MOL engaged in unfair, deceptive, untrue, and misleading advertising when it represented that MOL had the expertise to ship ACN's goods to China.  MOL's marketing materials stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

47.     MOL also engaged in unfair, deceptive, untrue, and misleading advertising when it marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."  MOL also publicly touted its values with, among other representations, the acronym "CHARTS," as described herein.  MOL also repeatedly issued press releases to reassure its current and prospective customers / business partners of MOL's commitment to maintaining safe operations during the pandemic.  These

press releases also reassured current customers / business partners that MOL would work with them to mitigate any inconvenience caused by the pandemic.

48.    ACN relied upon MOL's fraudulent advertising when it agreed to purchase MOL's services.  MOL's fraudulent advertising was likely to mislead a reasonable person and members of the public.

49.    ACN was harmed as a direct result of MOL's unfair, unlawful, and fraudulent business practices because ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

50.    ACN is entitled to equitable relief and restitution in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
**Promissory Fraud**

51.    ACN incorporates the foregoing allegations in paragraphs 1–39 as if fully set forth herein.

52.    ACN agreed to purchase MOL's transportation / freight services in 2021 based on MOL's promises.

53.    In order to induce ACN to purchase its services, MOL represented that it had the expertise to ship ACN's goods to China.  In marketing its services, MOL's materials stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

54.    MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."

Gibson, Dunn &
Crutcher LLP

COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED

55.     MOL also touted its values with, among other representations, the acronym "CHARTS," as described herein.

56.     MOL also repeatedly issued press releases to reassure its current and prospective customers (including ACN) of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers / business partners that MOL would work with them to mitigate any inconvenience caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020, MOL issued press releases stating that the company "mak[es] its top priority and the health and safety of customers . . . ."  On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company."  The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation."  On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority and to ensure the safety of its officers, employees and related parties" and "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties."  On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority and to ensure the safety of its officers, employees and related parties."  Those press releases also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

57.     MOL did not intend to uphold any of these promises when MOL made them.

58.     MOL intended for ACN to rely on these promises.

59.     ACN reasonably relied on these promises when it agreed to purchase MOL's services.

60.     After ACN agreed to purchase MOL's services, MOL failed to uphold these promises by insisting that ACN use MOL's wood chip vessels during the height of pandemic lockdowns in China, in potential violation of China's COVID-19 restrictions.  MOL also failed to uphold these promises when it continued to charge ACN an unconscionable price to charter MOL's vessels, when

it was impossible for ACN to do so without the risk of endangering its personnel or violating China's COVID-19 restrictions.

61.    ACN was harmed a result of MOL's conduct because, among other things, ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

62.    ACN's reliance on MOL's promises is a substantial factor in causing ACN's harm. ACN is entitled to equitable relief and damages in an amount to be determined at trial.

### **THIRD CAUSE OF ACTION**

### **Negligent Misrepresentation**

63.    ACN incorporates the foregoing allegations in paragraphs 1 – 39 as if fully set forth herein.

64.    MOL represented to ACN that it had the expertise to ship ACN's goods to China. MOL's corporate brochure stated that it operates "the world's largest fleet of dry bulk carriers[,] [which include the types of carriers used to transport wood chips], providing stable transport services that meet a full range of customer needs, with versatile bulk carriers that can accommodate a wide variety of cargoes and various types of dedicated vessels built from the design stage for the most economical and efficient transport in consideration of the characteristics of the specific cargo and the conditions of the loading and unloading ports."

65.    MOL also marketed its shipping services to ACN by claiming that it had developed a culture of safety, which employs techniques designed to achieve "the world's highest standards of safe operation."

66.    MOL also touted its values with, among other representations, the acronym "CHARTS," as described herein.

67.    MOL also repeatedly issued press releases to reassure its current and prospective customers (including ACN)  of MOL's commitment to maintaining safe operations during the pandemic.  These press releases also reassured current customers (referred to as "business partners") that MOL would work with them to mitigate any inconvenience caused by the pandemic.  For example, on March 9, 2020 and March 19, 2020, MOL issued press releases stating that the company

"mak[es] its top priority and the health and safety of customers . . . ."  On April 3, 2020, MOL issued a press release stating its commitment to "ensur[ing] the operational safety and navigation and stable transportation of vessels operated in our company."  The press release further stated that "MOL's mission still stands . . . and we aim in balancing efforts to prevent the spread of infection with meeting customer demand and providing stress-free services through safe and stable transportation."  On May 29, 2020 and June 17, 2020, MOL issued press releases stating that it "will continue to give top priority and to ensure the safety of its officers, employees and related parties" and "will continue to contribute to the society and global economic growth and development though safe and stable transportation," and will work to "avoid inconvenience to . . . business partners and related parties."  On July 29, 2020 and November 30, 2020, MOL issued press releases reiterating that it would "continue to give top priority and to ensure the safety of its officers, employees and related parties."  Those press release also stated that "MOL will take all possible measures not to cause any inconvenience to our business partners and related parties."

68.    MOL's aforementioned representations were not true.  Contrary to these representations, MOL insisted that ACN use MOL's wood chip vessels during the height of pandemic lockdowns in China, in potential violation of China's COVID-19 restrictions.  MOL also continued to charge ACN an unconscionable price to charter MOL's vessels, when it was impossible for ACN to do so without the risk of endangering its personnel or violating China's COVID-19 restrictions.

69.    MOL owed ACN a duty not to make these misrepresentations because they were conveyed in a commercial setting for business purposes, and MOL was a party to a business transaction with ACN.

70.    MOL had no reasonable grounds to believe these misrepresentations were true when it made them.

71.    MOL made these misrepresentations with the intent that ACN rely on them.

72.    ACN reasonably relied on these misrepresentations.

73.    ACN was harmed a result of MOL's conduct because, among other things, it was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

74.    ACN's reliance on MOL's misrepresentations is a substantial factor in causing ACN's harm.

75.    ACN is entitled to equitable relief and damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Negligence

76.    ACN incorporates the foregoing allegations in paragraph 1–39 as if fully set forth herein.

77.    MOL owed ACN a duty to act fairly and reasonably in compliance with standard business practices in the shipping industry, and the laws of California and the United States, including, among other things, section 396 of the California Penal Code; sections 41102(c) and 41102(d)(2)(B) of the Shipping Act of 1984, as amended by the Ocean Reform Act of 1998, and as interpreted by the FMC's interpretative rules; and section 17200 *et seq.* of the California Business and Professions Code.

78.    MOL breached that duty of care by charging ACN an unconscionable fee to charter MOL's wood chip vessels, and by insisting that ACN use those vessels at the risk of endangering ACN's personnel and at the risk of violating COVID-19 restrictions in China.  MOL's violation of law in connection with the conduct described herein constitutes negligence per se.

79.    ACN was harmed as a result of MOL's conduct because, among other things, ACN was forced to pay for the use of MOL's wood chip vessels when, in reality, ACN could not use those vessels for the reasons alleged herein.

80.    ACN is entitled to compensatory damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment

81.    ACN incorporates the foregoing allegations in paragraphs 1–39 as if fully set forth herein.

82.    ACN paid MOL for MOL to provide transportation / freight services.

83.    ACN could not use those transportation / freight services for the reasons alleged herein.

84.    It is unjust and unfair for MOL to retain ACN's payments for MOL's services, when MOL did not provide any service to ACN and ACN could not use those services for the reasons alleged herein.

85.    ACN is entitled to restitution in an amount to be determined at trial

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment for Plaintiff and against Defendants, as follows:

A.    For compensatory damages in an amount to be proven at trial;

B.    For restitution in an amount to be proven at trial;

C.    For equitable relief, including an injunction prohibiting MOL from continuing to demand performance of its unconscionable agreement for shipping services and its related unfair and unlawful business practices;

D.    For an award of pre-judgment and post-judgment interest for the maximum amount allowed by law;

E.    For an award of costs;

F.    For an award of reasonable attorneys' fees; and

G.    For any and all other relief the Court deems just and proper.


DATED: August 14, 2023                    GIBSON, DUNN & CRUTCHER LLP
                                          JAMES J. FARRELL
                                          DIANE CHAN
                                          ZACHARY A. KADY


                                          By:  */s/ James J. Farrell*
                                               James J. Farrell

                                          *Attorneys for Plaintiff America Chung Nam, LLC*


Gibson, Dunn &
Crutcher LLP

COMPLAINT OF AMERICA CHUNG NAM, LLC AGAINST MITSUI O.S.K. LINES, LIMITED

# EXHIBIT D

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Mitsui O.S.K. Lines, Ltd. and MOL (Americas) LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

America Chung Nam, LLC

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
8/14/2023 4:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>23STCV19358 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

James J. Farrell, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166, (212) 351-4000

DATE:       08/14/2023                  Clerk, by   David W. Slayton, Executive Officer/Clerk of Court , Deputy
*(Fecha)*                               *(Secretario)*              Y. Ayala                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

# EXHIBIT E

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>James J. Farrell, CA SBN 166595<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br><br>TELEPHONE NO.: (212) 351-4000    FAX NO. *(Optional):* (212) 351-4035<br>E-MAIL ADDRESS *(Optional):* JFarrell@gibsondunn.com<br>ATTORNEY FOR *(Name):* Plaintiff America Chung Nam, LLC | **FOR COURT USE ONLY**<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>8/17/2023 12:47 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Abraham, Deputy Clerk** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 North North Hill Street<br>MAILING ADDRESS: 111 North Hill Street<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: America Chung Nam, LLC | CASE NUMBER:<br>23STCV19358 |
| DEFENDANT/RESPONDENT: Mitsui O.S.K. Lines, Ltd, et al. | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. ☒ summons

    b. ☒ complaint

    c. ☒ Alternative Dispute Resolution (ADR) package

    d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

    e. ☐ cross-complaint

    f. ☒ other *(specify documents):* Notice of Case Assignment, Voluntary Efficient Litigation Stipulation, Amended Efiling Order

3. a. Party served *(specify name of party as shown on documents served):*
    Mitsui O.S.K. Lines, Ltd, et al.

    b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
    under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
    Kartik Pandya, Intake Spceialist

4. Address where the party was served:
    c/o C.T. Corp., registered agent, 28 Liberty Street, 42nd Floor, New York, NY 10005

5. I served the party *(check proper box)*

    a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
    receive service of process for the party  (1) on *(date):* August 15, 20203        (2) at *(time):* 2:55 p.m.

    b. ☐ **by substituted service.** On *(date):*                   at *(time):*        I left the documents listed in item 2 with or
    in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
        of the person to be served. I informed him or her of the general nature of the papers.

        (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
        place of abode of the party. I informed him or her of the general nature of the papers.

        (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
        address of the person to be served, other than a United States Postal Service post office box. I informed
        him or her of the general nature of the papers.

        (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
        at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
        *(date):*              from *(city):*                        or ☐ a declaration of mailing is attached.

        (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

| PLAINTIFF/PETITIONER: America Chung Nam, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Mitsui O.S.K. Lines, Ltd, et al. | 23STCV19358 |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*                  (2)  from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☒ On behalf of *(specify):* Mitsui O.S.K. Lines, Ltd
    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)

    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)

    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)

    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)

    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)

                                    ☐ other:

7.  **Person who served papers**

  a.  Name: Michael Keating c/o Keating & Walker Attorney Service, Inc.

  b.  Address: 116 Nassau Street, Suite 816, New York, NY 10038

  c.  Telephone number: (212) 964-6444

  d.  **The fee** for service was: $ 100.00

  e.  I am:

    (1) ☒ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ a registered California process server:

      (i) ☐ owner   ☐ employee   ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8.  ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    **or**

9.  ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 15, 2023

Michael Keating
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶    (SIGNATURE)

    **PROOF OF SERVICE OF SUMMONS**    

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    [ Print this form ]  [ Save this form ]    [ Clear this form ]

# EXHIBIT F

||||||||||||||||||||||||||||||
6  6  1  8  4  9

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

**Plaintiff**
**AMERICA CHUNG NAM, LLC**

vs

**Defendant**
**MITSUI O.S.K. LINES, LTD, ET AL**

DOCKET NO.  23STCV19358

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

Person to be served: **MITSUI O.S.K. LINES, LIMITED**
C/O CT CORPORATION SYSTEM, REGISTERED AGENT
Address:
**10 WOODBRIDGE CENTER
DRIVE, SUITE 1000
WOODBRIDGE NJ 07095**

Attorney: JAMES J. FARRELL, (CA SBN 166595)
GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NY  10166-0193

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/17/2023 12:52 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Abraham, Deputy Clerk

Papers Served:
SUMMONS, COMPLAINT, CIVIL CASE COVER SHEET, ADDENDUM AND STATEMENT OF LOCATION, NOTICE OF CASE ASSIGNMENT,

ALTERNATE DISPUTE RESOLUTION INFORMATION PACKAGE, FIRST AMENDED GENERAL ORDER, VOLUNTARY EFFICIENT LITIGATION STIPULATIONS,

**Service Data:**

Served Successfully __✓__    Not Served _____    Date: _8/15/23_    Time: _4:30pm_    Attempts: _____

_____  Delivered a copy to him/her personally

_____  Left a copy with a competent household
member over 14 years of age residing therein at place of abode.

__X__  Left a copy with a person authorized to accept
service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship/title

_Shannon Rosario_

PERSON IN CHARGE AT THE OFFICE
OF THE REGISTERED AGENT OF
THE CORPORATION.

**Description of Person Accepting Service:**

Age: _46_  Height: _5'5_  Weight: _140_  Hair: _brown_  Sex: _female_  Race: _hisp._

**Non-Served:**

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time _____
_____ Date _____ Time _____
_____ Date _____ Time _____
( ) Other: _____  Comments or Remarks _____

Subscribed and Sworn to me this
_16_ day of _Aug 2023_

_____
Notary Signature

MELISSA GIAMBATTISTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 9/17/2024

I, CARLOS PEREZ _____, was at
time of service a competent adult not having a direct
interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

_____  _8/16/23_
Signature of Process Server        Date

DGR LEGAL, INC.
1359 Littleton Road, Morris Plains, NJ 07950-3000
(973) 403-1700  Fax (973) 403-9222

Work Order No.  **661849**

File No.  06762-00001

# EXHIBIT G

| Attorney or Party without Attorney:<br>JAMES J. FARRELL (SBN 166595)<br>Gibson Dunn & Crutcher LLP<br>200 Park Ave<br>New York, NY 10166<br>Telephone No: 212-351-5391<br>Attorney For: Plaintiff | | *For Court Use Only*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>8/17/2023 12:35 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Abraham, Deputy Clerk** |
|---|---|---|
| | *Ref. No. or File No.:*<br>06762-00001 | |
| Insert name of Court, and Judicial District and Branch Court:<br>In The Superior Court Of The State Of California County Of Los Angeles | | |
| Plaintiff: AMERICA CHUNG NAM, LLC<br>Defendant: MITSUI O.S.K. Lines, LTD.; MOL (Americas) LLC | | |

| **PROOF OF SERVICE<br>SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>23STCV19358 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; COMPLAINT; NOTICE OF CASE ASSIGNMENT UNLIMITED CIVIL CASE; ADR INFORMATION PACKAGE; FIRST AMENDED GENERAL ORDER; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; ORDER PURSUANT TO CCP 1054(a)

3.   *a.*  Party served:   Mitsui O.S.K. Lines, Ltd.
  *b.*  Person served:   DIANA RUIZ, CT CORPORATION SYSTEM, REGISTERED AGENT FOR SERVICE OF PROCESS.

4. *Address where the party was served:*   330 NORTH BRAND BOULEVARD SUITE 700, GLENDALE, CA 91203

5. *I served the party:*
  **a. by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Tue, Aug 15 2023 (2) at *(time)*: 12:40 PM
  (1)  [X]  **(business)**
  (2)  [ ]  **(home)**
  (3)  [ ]  **(other)** :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [ ]  as an individual defendant.
  b.  [ ]  as the person sued under the fictitious name of *(specify)*:
  c.  [ ]  as occupant.
  d.  [X]  On behalf of *(specify)*:   Mitsui O.S.K. Lines, Ltd.
    under the following Code of Civil Procedure section:

| | |
|---|---|
| [ ] 416.10 (corporation) | [X] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| [ ] other: | |



| Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF<br>SERVICE<br>SUMMONS** | *9372923<br>(6016213)*<br>Page 1 of 2 |
|---|---|---|

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| JAMES J. FARRELL (SBN 166595)<br>Gibson Dunn & Crutcher LLP<br>200 Park Ave<br>New York, NY 10166<br>Telephone No: 212-351-5391 | |

| Attorney For: Plaintiff | Ref. No. or File No.:<br>06762-00001 |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*
In The Superior Court Of The State Of California County Of Los Angeles

Plaintiff: AMERICA CHUNG NAM, LLC
Defendant: MITSUI O.S.K. Lines, LTD.; MOL (Americas) LLC

| **PROOF OF SERVICE<br>SUMMONS** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>23STCV19358 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a.  Name:              Douglas Forrest
   b.  Address:         **FIRST LEGAL**
                                  200 WEBSTER STREET, SUITE 201
                                  OAKLAND, CA 94607
   c.  Telephone number:    (415) 626-3111
   d.  **The fee** for service was:  88.11
   e.  I am:
      (1)  ☐  not a registered California process server.
      (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3)  ☒  a registered California process server:
            (i)    ☐ owner    ☐ employee   ☒ independent contractor
            (ii)   Registration No:  5141, Los Angeles
            (iii)  County:  Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

08/15/2023
*(Date)*

Douglas Forrest



| Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF<br>SERVICE<br>SUMMONS** | *9372923*<br>*(6016213)*<br>Page 2 of 2 |
|---|---|---|

# EXHIBIT H

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

Plaintiff
**AMERICA CHUNG NAM, LLC**

vs

Defendant
**MITSUI O.S.K. LINES, LTD, ET AL**

DOCKET NO.  23STCV19358

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

Person to be served: MOL (AMERICAS) LLC
  C/O CT CORPORATION SYSTEM, REGISTERED AGENT
Address:
**10 WOODBRIDGE CENTER
DRIVE, SUITE 1000
WOODBRIDGE NJ 07095**

Attorney: JAMES J. FARRELL. (CA SBN 166595)
  GIBSON, DUNN & CRUTCHER LLP
  200 PARK AVENUE
  NEW YORK, NY 10166-0193

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/17/2023 12:54 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Abraham, Deputy Clerk

Papers Served:
SUMMONS, COMPLAINT, CIVIL CASE COVER SHEET, ADDENDUM AND STATEMENT OF LOCATION, NOTICE OF CASE ASSIGNMENT,

ALTERNATE DISPUTE RESOLUTION INFORMATION PACKAGE, FIRST AMENDED GENERAL ORDER, VOLUNTARY EFFICIENT LITIGATION STIPULATIONS,

Service Data:

Served Successfully ___✓___    Not Served _____    Date: _8/15/23_    Time: _4:30pm_    Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household
member over 14 years of age residing therein at place of abode.

Name of Person Served and relationship/title

_Shannon Rosario_

__✓__ Left a copy with a person authorized to accept
service, e.g. managing agent, registered agent, etc.

~~PERSON IN CHARGE AT THE OFFICE
OF THE REGISTERED AGENT OF
THE CORPORATION.~~

Description of Person Accepting Service:

Age: _66_    Height: _5.5_    Weight: _140_    Hair: _brown_    Sex: _female_    Race: _hisp._

Non-Served:

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time _____
_____ Date _____ Time _____
_____ Date _____ Time _____
( ) Other: _____    Comments or Remarks _____

Subscribed and Sworn to me this
_16_ day of _Aug 2023_

_____
Notary Signature

I, CARLOS PEREZ _____, was at
time of service a competent adult not having a
direct interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

_____    _8/16/23_
Signature of Process Server    Date

MELISSA GIAMBATTISTA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 9/17/2024

**DGR LEGAL, INC.**
**1359 Littleton Road, Morris Plains, NJ 07950-3000**
**(973) 403-1700  Fax (973) 403-9222**

Work Order No.  661847

File No.  06762-00001

# EXHIBIT I

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>James J. Farrell, CA SBN 166595<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br><br>TELEPHONE NO.: (212) 351-4000    FAX NO. *(Optional):* (212) 351-4035<br>E-MAIL ADDRESS *(Optional):* JFarrell@gibsondunn.com<br>ATTORNEY FOR *(Name):* Plaintiff America Chung Nam, LLC | *FOR COURT USE ONLY*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>8/17/2023 12:49 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Abraham, Deputy Clerk** |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>STREET ADDRESS: 111 North North Hill Street<br>MAILING ADDRESS: 111 North Hill Street<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Stanley Mosk Courthouse | |
| PLAINTIFF/PETITIONER: America Chung Nam, LLC<br>DEFENDANT/RESPONDENT: Mitsui O.S.K. Lines, Ltd, et al. | CASE NUMBER:<br>23STCV19358 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):* Notice of Case Assignment, Voluntary Efficient Litigation Stipulation, Amended Efiling Order

3. a. Party served *(specify name of party as shown on documents served):*
      MOL (Americas) LLC
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Kartik Pandya, Intake Specialist

4. Address where the party was served:
   c/o C.T. Corp., registered agent, 28 Liberty Street, 42nd Floor, New York, NY 10005

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on *(date):* August 15, 2023      (2) at *(time):* 2:55 p.m.

   b. ☐ **by substituted service.** On *(date):*                     at *(time):*          I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*              from *(city):*                        or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**

| PLAINTIFF/PETITIONER:  America Chung Nam, LLC | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Mitsui O.S.K. Lines, Ltd, et al. | 23STCV19358 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the
address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date)*:           (2)  from *(city)*:

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed
to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* MOL (Americas) LLC
     under the following Code of Civil Procedure section:

        ☒  416.10 (corporation)            ☐  415.95 (business organization, form unknown)

        ☐  416.20 (defunct corporation)        ☐  416.60 (minor)

        ☐  416.30 (joint stock company/association)   ☐  416.70 (ward or conservatee)

        ☐  416.40 (association or partnership)    ☐  416.90 (authorized person)

        ☐  416.50 (public entity)            ☐  415.46 (occupant)

                              ☐  other:

7.  **Person who served papers**

  a.  Name:  Michael Keating c/o Keating & Walker Attorney Service, Inc.

  b.  Address:  116 Nassau Street, Suite 816, New York, NY 10038

  c.  Telephone number:  (212) 964-6444

  d.  **The fee** for service was: $ 100.00

  e.  I am:

    (1)  ☒  not a registered California process server.

    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

        (i)  ☐  owner    ☐  employee    ☐  independent contractor.

        (ii)  Registration No.:

        (iii)  County:

8.  ☐  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:  August 15, 2023

Michael Keating
    (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                    ▶    (SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.    | Print this form |  | Save this form |        | Clear this form |

# EXHIBIT J

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>JAMES J. FARRELL (SBN 166595)<br>Gibson Dunn & Crutcher LLP<br>200 Park Ave<br>New York, NY 10166<br>*Telephone No:* 212-351-5391 | *For Court Use Only*<br><br>**Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>8/17/2023 12:42 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Abraham, Deputy Clerk** |

| | |
|---|---|
| *Attorney For:* Plaintiff | *Ref. No. or File No.:*<br>06762-00001 |

*Insert name of Court, and Judicial District and Branch Court:*
In The Superior Court Of The State Of California County Of Los Angeles

Plaintiff: AMERICA CHUNG NAM, LLC
Defendant: MITSUI O.S.K. Lines, LTD.; MOL (Americas) LLC

| **PROOF OF SERVICE<br>SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>23STCV19358 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION; COMPLAINT; NOTICE OF CASE ASSIGNMENT UNLIMITED CIVIL CASE; ADR INFORMATION PACKAGE; FIRST AMENDED GENERAL ORDER; VOLUNTARY EFFICIENT LITIGATION STIPULATIONS; ORDER PURSUANT TO CCP 1054(a)

3. a. Party served: MOL (Americas) LLC
   b. Person served: DIANA RUIZ, CT CORPORATION SYSTEM, REGISTERED AGENT FOR SERVICE OF PROCESS.

4. *Address where the party was served:* 330 NORTH BRAND BOULEVARD SUITE 700, GLENDALE, CA 91203

5. *I served the party:*
   **a. by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Tue, Aug 15 2023 (2) at *(time)*: 12:40 PM
   (1) [X] (business)
   (2) [ ] (home)
   (3) [ ] (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: MOL (Americas) LLC
      under the following Code of Civil Procedure section:
      [ ] 416.10 (corporation)               [ ] 415.95 (business organization, form unknown)
      [ ] 416.20 (defunct corporation)        [ ] 416.60 (minor)
      [ ] 416.30 (joint stock company/association)  [ ] 416.70 (ward or conservatee)
      [ ] 416.40 (association or partnership)  [ ] 416.90 (authorized person)
      [ ] 416.50 (public entity)              [ ] 415.46 (occupant)
      [X] other: LLC



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF<br>SERVICE<br>SUMMONS**

*9372909<br>(6016208)*
Page 1 of 2

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| JAMES J. FARRELL (SBN 166595)<br>Gibson Dunn & Crutcher LLP<br>200 Park Ave<br>New York, NY 10166<br>*Telephone No:*  212-351-5391 | |

| *Attorney For:*  Plaintiff | *Ref. No. or File No.:*<br>06762-00001 |
|---|---|

*Insert name of Court, and Judicial District and Branch Court:*
In The Superior Court Of The State Of California County Of Los Angeles

Plaintiff:  AMERICA CHUNG NAM, LLC
Defendant:  MITSUI O.S.K. Lines, LTD.; MOL (Americas) LLC

| **PROOF OF SERVICE SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>23STCV19358 |
|---|---|---|---|---|

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a.  Name:  Douglas Forrest
   b.  Address:  **FIRST LEGAL**
       200 WEBSTER STREET, SUITE 201
       OAKLAND, CA 94607
   c.  Telephone number:  (415) 626-3111
   d.  **The fee** for service was:  233.09
   e.  I am:
       (1) ☐ not a registered California process server.
       (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
       (3) ☒ a registered California process server:
           (i) ☐ owner  ☐ employee  ☒ independent contractor
           (ii) Registration No:  5141, Los Angeles
           (iii) County:  Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

08/15/2023
*(Date)*

Douglas Forrest



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*9372909*
*(6016208)*
Page 2 of 2

# EXHIBIT K

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
James J. Farrell, CA SBN 166595
200 Park Avenue, New York, NY 10166

TELEPHONE NO.: (212) 351-4000     FAX NO. *(Optional):* (212) 351-4035
E-MAIL ADDRESS: JFarrell@gibsondunn.com
ATTORNEY FOR *(Name):* America Chung Nam, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|

*FOR COURT USE ONLY*

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/14/2023 4:03 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By Y. Ayala, Deputy Clerk

**CIVIL CASE COVER SHEET**

[x] **Unlimited**     [ ] **Limited**
(Amount          (Amount
demanded        demanded is
exceeds $25,000)   $25,000 or less)

**Complex Case Designation**
[ ] Counter   [ ] Joinder
Filed with first appearance by defendant
(Cal. Rules of Court, rule 3.402)

CASE NUMBER:
23STCV19358

JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties        d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve               courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence              court
                                                                 f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* five
5. This case [ ] is  [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 14, 2023
James J. Farrell
_____
(TYPE OR PRINT NAME)

*James J. Farrell*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*

**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer*
        *or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
        *domain, landlord/tenant, or*
        *foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-*
        *domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
    *above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
        *harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified*
    *above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE | CASE NUMBER |
|---|---|
| America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al. | 23STCV19358 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.  Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.  Location where petitioner resides. |
| 2.  Permissive filing in Central District. | 8.  Location wherein defendant/respondent functions wholly. |
| 3.  Location where cause of action arose. | 9.  Location where one or more of the parties reside. |
| 4.  Location where bodily injury, death or damage occurred. | 10.  Location of Labor Commissioner Office. |
| 5.  Location where performance required, or defendant resides. | 11.  Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.  Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract**<br>(Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>                  Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| America Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd. et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: ☐ 1. ☐ 2. ☑ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS: 111 North Hill Street |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the  __Central__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __08/14/2023__

_James J. Farrell_

(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

# EXHIBIT L

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>08/14/2023<br><br>David W. Slayton, Executive Officer / Clerk of Court<br><br>By: _____ Y. Ayala _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>23STCV19358 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Timothy Patrick Dillon | 73 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 08/14/2023
      (Date)

David W. Slayton, Executive Officer / Clerk of Court

By Y. Ayala_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION

The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS

All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS

Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE

A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions

Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases

Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# EXHIBIT M

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
**Stanley Mosk Courthouse**
**111 North Hill Street, Los Angeles, CA 90012**

PLAINTIFF:
America Chung Nam, LLC

DEFENDANT:
Mitsui O.S.K. Lines, LTD, et al.

## NOTICE OF CASE MANAGEMENT CONFERENCE

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

08/15/2023

David W. Slayton, Executive Officer / Clerk of Court

By: _____ D. Ortiz _____ Deputy

CASE NUMBER:
23STCV19358

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 01/04/2024    Time: 8:30 AM    Dept.: 73

NOTICE TO DEFENDANT:    THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 08/15/2023

Judicial Officer

Timothy Patrick Dillon / Judge

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in _____ Los Angeles _____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

James J. Farrell
200 Park Avenue
New York, NY 10166

David W. Slayton, Executive Officer / Clerk of Court

Dated: 08/15/2023

By _____ D. Ortiz _____
Deputy Clerk

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter 7KUHH

# EXHIBIT N



# Superior Court of California, County of Los Angeles

<div style="border:1px solid black">

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

</div>

## What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

## Main Types of ADR
1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
   https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# EXHIBIT O

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 3 2019

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )      FIRST AMENDED GENERAL ORDER
─ MANDATORY ELECTRONIC FILING       )
FOR CIVIL                           )
                                    )
                                    )
                                    )
_____ )

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"**   An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**   For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**   An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**   A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

   a) Trial Court Records

      Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

   b) Represented Litigants

      Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

   c) Public Notice

      The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i)   Depositions;

   ii)  Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv)  Transcripts (including excerpts within transcripts);

   v)   Points and Authorities;

   vi)  Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted.   (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i)   Any printed document required pursuant to a Standing or General Order;

   ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii)   Pleadings and motions that include points and authorities;

   iv)   Demurrers;

   v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi)   Motions for Summary Judgment/Adjudication; and

   vii)   Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1  11) SIGNATURES ON ELECTRONIC FILING

2    For purposes of this General Order, all electronic filings must be in compliance with California

3    Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4    Division of the Los Angeles County Superior Court.

5

6        This First Amended General Order supersedes any previous order related to electronic filing,

7    and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8    Supervising Judge and/or Presiding Judge.

9

10   DATED:  May 3, 2019

     KEVIN C. BRAZILE
11   Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7
FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

# EXHIBIT P

**VOLUNTARY EFFICIENT LITIGATION STIPULATIONS**



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

 The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application.  These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

 *The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
(INSERT DATE)                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Print          Save                                                      Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.    Be filed within two (2) court days of receipt of the Request; and

      iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c.   No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d.   If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e.   If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.   If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.   The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.   Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.   Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.   References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| Print | Save | | Clear |
|---|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Print    Save    Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| Print | Save | | Clear |
|---|---|---|---|

**FILED**

LOS ANGELES SUPERIOR COURT

MAY 11 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

General Order Re       )    ORDER PURSUANT TO CCP 1054(a),
Use of Voluntary Efficient Litigation   )    EXTENDING TIME TO RESPOND BY
Stipulations                   )    30 DAYS WHEN PARTIES AGREE
                            )    TO EARLY ORGANIZATIONAL
                            )    MEETING STIPULATION
_____ )

         Whereas the Los Angeles Superior Court and the Executive Committee of the

Litigation Section of the Los Angeles County Bar Association have cooperated in

drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for

use in general jurisdiction civil litigation in Los Angeles County;

         Whereas the Los Angeles County Bar Association Litigation Section; the Los

Angeles County Bar Association Labor and Employment Law Section; the Consumer

Attorneys Association of Los Angeles; the Association of Southern California Defense

Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California

Employment Lawyers Association all "endorse the goal of promoting efficiency in

litigation, and ask that counsel consider using these stipulations as a voluntary way to

promote communications and procedures among counsel and with the court to fairly

resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court

order.

DATED: _May 11, 2011_     _Carolyn B. Kuhl_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

# EXHIBIT Q

1  Conte C. Cicala (SBN 173554)
   conte.cicala@withersworldwide.com
2  **Withers Bergman LLP**
   909 Montgomery Street, Suite 300
3  San Francisco, California 94133
   Telephone:    415.872.3200
4  Facsimile:    415.549.2480

5  Attorney for Defendants Mitsui O.S.K. Lines, Ltd.,
   MOL (Americas) LLC, and MOL Drybulk, Ltd.
6

7          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8           **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

9

10  AMERICA CHUNG NAM, LLC,               Case No. 23STCV19358

11            *Plaintiff*,                **NOTICE OF REMOVAL OF ACTION**

12        v.                              Complaint Filed:    August 14, 2023
                                          Trial Date:         None
13  MITSUI O.S.K. Lines, LTD., MOL
    (Americas) LLC, and MOL DRYBULK,
14  LTD.,

15            *Defendants*.

16

17

18

19

20

21

22

23

24

25

26

27

28

WITHERS
BERGMAN LLP  12876151/1

1    **TO THE COURT AND TO PLAINTIFF AND THEIR ATTORNEYS OF RECORD:**

2        PLEASE TAKE NOTICE that Defendants Mitsui O.S.K. Lines, Ltd. ("MOL"), MOL

3    (Americas) LLC ("MOLAM"), and MOL Drybulk, Ltd. ("MOL Drybulk") (collectively

4    "Defendants") have removed this case from the Superior Court of California, County of Los

5    Angeles, to the United States District Court for the Central District of California. True and correct

6    copies of Defendants' Notice of Removal of Action, Civil Cover Sheet, and Notice of Interested

7    Parties are attached hereto as Exhibits A, B and C, respectively.

8

9    DATED: September 14, 2023        WITHERS BERGMAN LLP

10

11                      By:   /s/ Conte C. Cicala

12                        Conte C. Cicala

13                        *Attorney for Defendants Mitsui O.S.K. Lines, Ltd.,*
                    *MOL (Americas) LLC, and MOL Drybulk, Ltd.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28