UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICA CHUNG NAM, LLC et al.,<br><br>    Plaintiff,<br><br>v.<br><br>MITSUI O.S.K. LINES, LTD. et al.,<br><br>    Defendants. | Case No. 2:23-cv-07676-SB-JPR<br><br><br>ORDER DENYING MOTION TO REMAND [DKT. NO. 30] AND GRANTING MOTION TO COMPEL ARBITRATION [DKT. NO. 23-3] |

    Plaintiff America Chung Nam (ACN) exports wood chips from the United States to China.  Because wood chips lose their usefulness if they dry out, ACN chartered several specialized, humidity-controlled ships designed for transporting these products from Defendants Mitsui O.S.K. Lines, MOL (Americas) LLC, and MOL Drybulk, Ltd. (collectively MOL).  Then COVID surged in China.  China shut down several cities, including Dongguan, ACN's intended destination.  Unable to ship to Dongguan, ACN no longer needed the ships.  But under the terms of the charter agreements (called "Charter Parties"), ACN was still obligated to pay MOL—and at rates ACN claims exploited the global crisis.  So ACN sued MOL in California state court, alleging violations of California's Business and Professions Code, fraud, misrepresentation, negligence, and unjust enrichment.

    MOL removed the case to federal court, asserting jurisdiction under the Federal Arbitration Act (FAA), diversity jurisdiction, and admiralty jurisdiction.  MOL also filed a motion to compel arbitration based on the clauses in the Charter Parties.  ACN moves to remand the case, challenging each ground for jurisdiction and separately arguing that *Younger* abstention applies.  The Court heard argument on both motions on December 19, 2023.  Because this Court has jurisdiction under the FAA and ACN's abstention argument lacks merit, the Court denies the motion to remand.  And because the Charter Parties contain an enforceable arbitration

1

provision covering the claims at issue, the Court grants the motion to compel arbitration.

I.

ACN and MOL entered into two Charter Parties at issue here—the first signed on July 21, 2021, and the second signed on April 1, 2022—for seven different ships. Dkt. Nos. 23-1, 23-2. Both agreements contained arbitration provisions (Dkt. No. 23-1 ¶ 47; Dkt. No. 23-2 ¶ 47), and both were subsequently amended several times (Dkt No. 23-1 at 19–44; Dkt. No. 23-2 at 18–28). During negotiations, MOL represented that it was committed to safety and working with ACN to mitigate pandemic-related challenges.[1] Dkt. No. 1-1 ¶ 4. ACN agreed to pay nearly $45 million to charter the wood chip vessels, a price that was "dramatically higher" than what MOL had charged prior to the pandemic. *Id.* ¶¶ 33–35.

In late 2021, after ACN and MOL had entered into the agreements, China experienced multiple surges of COVID-19. *Id.* ¶ 6. China issued widespread lockdowns, implemented "zero-COVID-19" laws, and restricted the movement of people and goods. *Id.* ACN could no longer use the ships to export wood chips to China without jeopardizing the health of its employees and potentially violating China's COVID laws. *Id.* ACN stopped using the ships and asked MOL to suspend the agreement because it was impossible for ACN to use the ships. *Id.* ¶ 42. MOL refused, demanding full payment of the contract price. *Id.* ¶ 43. ACN claims it lost tens of millions of dollars as a result of its inability to use the ships while still being required to pay for them. *Id.*

ACN sued MOL in California state court on September 11, 2023, for violations of California's unfair competition law (UCL), false and misleading statements, promissory fraud, negligent misrepresentation, negligence, and unjust enrichment. MOL removed the case on September 14. ACN moves to remand, and MOL moves to compel arbitration.

II.

As one of three independent bases for removal, MOL contends the Convention provides this Court with subject-matter jurisdiction because both

---

[1] For the purposes of this order, the Court assumes (without deciding) the veracity of the allegations in ACN's first amended complaint.

Charter Parties contain international arbitration provisions.² Dkt. No. 1 ¶¶ 5–12. Because this Court is required to decide gateway questions of arbitrability, and because the determination of arbitrability is relevant to both pending motions, the Court begins there.

### A.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (aka "the New York Convention") governs the enforcement of international arbitration agreements. Section 203 grants federal courts subject-matter jurisdiction over any "action or proceeding falling under the Convention." 9 U.S.C. § 203. Section 205 grants federal courts removal jurisdiction over state court actions that "relate[] to an arbitration agreement or award falling under the Convention." *Id.* § 205. Under the Convention, "the ground for removal . . . need not appear on the face of the complaint but may be shown in the petition for removal." *Id.*

### B.

As a threshold matter, MOL argues that an arbitrator, not the Court, should decide whether there is an arbitration agreement in this case. Generally, a court determines whether there is an agreement to arbitrate and whether the agreement covers the dispute, unless the arbitration clause "clearly and unmistakably" delegates those questions to the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

An arbitration clause can clearly and unmistakably delegate those questions by expressly incorporating a set of rules that do so. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (AAA rules constitute delegation); *see also Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (ICC Rules constitute delegation). Here, the clause states that arbitration is to be conducted in accordance with London Maritime Arbitrators Association (LMAA) Terms. MOL does not identify any authority holding that LMAA Terms constitute a clear and unmistakable delegation. Instead, MOL quotes portions of the LMAA Terms and the AAA rules and argues that they are materially similar. The quoted portion of the LMAA Terms states that "jurisdiction of the tribunal shall extend to determining all

---

² Because the Court finds a basis for jurisdiction in the Convention, it does not reach the alternate bases of diversity jurisdiction or admiralty jurisdiction.

disputes arising under or in connection with the transaction the subject of the reference." Dkt. No. 23-3 at 9–10.  By contrast, AAA rules state that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* at 10.  These terms are materially different:  the AAA rules clearly contemplate the ability of the arbitrator to rule on arbitrability challenges, whereas the LMAA Terms merely discuss the scope of disputes subject to arbitration (without specifying who will decide arbitrability challenges).  Because the selected rules do not reflect a clear and unmistakable delegation, the Court must decide whether an arbitration agreement exists.

ACN argues that an arbitration agreement does not exist because an amendment to the Charter Parties, requiring the parties to consult about any ambiguities in or omissions from the agreements, superseded the original arbitration clause.[3]  The original arbitration clauses state:

> **Dispute Resolution[]**
>
> Any dispute arising from this Charter shall be submitted to arbitration . . . . [A]ny dispute arising out of or in connection with this Contract shall be referred to arbitration in London . . . ."

Dkt. No. 23-1 ¶ 47; *accord* Dkt. No. 23-2 ¶ 47 (same).  But Addendum No. 11 to the 2021 Charter Party and Addendum No. 6 to the 2022 Charter Party both state:

> **Consultation**
>
> Any matters not addressed in this Agreement, or any doubt or uncertainty with respect to this Agreement, shall be determined or resolved through good faith consultation between the Parties.

Dkt. No. 23-1 at 39–40 of 44; *accord* Dkt. No. 23-2 at 27 of 28 (same).

---

[3] MOL argues that interpreting the clause in the addenda is an issue of contract interpretation that should be left to the arbitrator.  However, the clause at issue here raises a threshold question of contract formation that the Court must decide.  *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) ("hold[ing] that parties cannot delegate issues of formation to the arbitrator").

ACN conclusorily asserts that the parties "drop[ped] the arbitration provision" by amending the agreement to include the consultation requirement. Dkt. No. 29 at 6–7. ACN does not explain how this amendment, which does not mention arbitration, serves that purpose. In its opposition to the motion to compel arbitration, ACN provides no analysis or legal standard for evaluating whether the amendment supersedes the original Charter Party provision.[4] Instead, in its reply in support of its motion to remand, ACN states that the "Addenda created a new mechanism by which the Charter Parties were to resolve any disputes arising from the Charter Parties," and that the Court must apply California law to decide whether the provisions survived the addenda.[5] ACN then invokes the general principle under California law that when parties enter into two successive contracts covering the same subject matter, the contracts should be interpreted together if they can be read harmoniously, with the latter agreement prevailing if the two are inconsistent. Dkt. No. 36 at 5–6 (citing, *e.g.*, *Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022), *cert. granted,* No. 23-3, 2023 WL 7266998 (U.S. Nov. 3, 2023)). MOL, for its part, cites case law standing for the proposition that a superseding amendment must demonstrate an explicit intent to rescind an arbitration clause. Dkt. No. 34 at 2–3 (citing *Homestake Lead Co. of Missouri v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003); *UBS Fin. Servs. v. Carilion Clinic*, 706 F.3d 319, 329 (4th Cir. 2013)).

The Court need not determine which body of law applies here, because even under ACN's proffered standard, the addenda reasonably cannot be read to conflict with and thus displace the arbitration provision. *See Castillo v. Stanley*, No. 19-cv-7072, 2020 WL 5038611 at *2 n.1 (S.D.N.Y. Aug. 26, 2020) ("In any event, because these potential sources of law all generate the same result, [the Court]

---

[4] ACN requests limited jurisdictional discovery on the meaning of the consultation provision "in the event there is a dispute regarding the meaning of the amendments." Dkt. 29 at 6. At the December 19 hearing, the Court asked ACN if it was aware of any relevant extrinsic evidence and invited ACN to make an offer of proof. Even though ACN would be privy to such information (e.g., the communicated negotiation history), it acknowledged that it was unaware of any relevant evidence. Accordingly, the Court declines to allow discovery on the meaning of the consultation provision.

[5] ACN cites various decisions under the FAA discussing the application of state law to questions of contract formation but does not explain why it is appropriate to apply California law when the parties' agreement contains a choice-of-law provision requiring the application of English law. Dkt. No. 23-1 ¶ 47.

need not resolve the choice of law issue."). ACN's position that the consultation provision is "inconsistent with and thereby eradicates the earlier arbitration provision" because it creates a "new mechanism by which the Charter Parties were to resolve any disputes" is unpersuasive. Dkt. No. 36 at 4–5. In effect, ACN reads the consultation provision to provide the exclusive means of dispute resolution.[6] But if that interpretation were correct, it would preclude all third-party dispute resolution (including this lawsuit)—rendering the agreement practically (if not legally) unenforceable. This interpretation is unreasonable and must be rejected. See Walsh v. Schlecht, 429 U.S. 401, 408 (1977) (noting that "contracts should not be interpreted to render them illegal and unenforceable where the wording lends itself to a logically acceptable construction that renders them legal and enforceable").

Harmonizing the dispute-resolution and consultation provisions requires little effort. Read together, the parties are required under the consultation provision to attempt to resolve potential or actual disputes before resorting to arbitration under the dispute-resolution provision. This dual approach to dispute resolution presents no inconsistency, nor does it introduce any novelty. It is commonplace to require informal efforts to resolve a dispute before engaging in more costly formal efforts.[7] See, e.g., Bielski v. Coinbase, Inc., No. 22-15566, 2023 WL 8408123, at *7 (9th Cir. Dec. 5, 2023) ("Pre-arbitration dispute resolution procedures are commonplace and can be both 'reasonable and laudable.'") (quoting Serpa v. Cal. Sur. Investigations, Inc., 215 Cal. App. 4th 695, 710 (2013)). Because the two provisions can be read together readily, the Court rejects ACN's interpretation. See Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles, 725 F.3d 1194, 1206 (9th Cir. 2013) ("An interpretation which gives a

---

[6] At the motion hearing, ACN admitted that this is an accurate characterization of its position.

[7] ACN argued at the hearing that if the consultation provision is a "condition precedent" to arbitration, then the Court should order the parties to consult. This argument has a number of problems. Even if it were accurate to describe this provision as a "condition precedent," ACN would have violated it by failing to consult before suing (assuming it failed to consult). And if ACN failed to comply with this requirement, it is in no position to now insist upon its compliance. ACN failed to adequately explain why its conduct in filing this lawsuit did not waive its reliance on the provision.

6

reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

C.

The next question is whether the arbitration agreement provides a basis for jurisdiction.  Jurisdiction under the Convention attaches if (1) the agreement "falls under" the Convention and (2) the subject matter of the state court proceeding "relates to" the agreement.  9 U.S.C. § 205; *accord* *Jones Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1138 (9th Cir. 2022).

Under § 202, "an arbitration agreement . . . arising out of a legal relationship . . . which is considered commercial . . . falls under the Convention."  9 U.S.C. § 202; *accord* *Jones Day*, 42 F.4th at 1133 ("It is clear that the enforcement of an agreement to arbitrate or an arbitral award 'fall[s] under the Convention.'").  Here, the arbitration agreement arises out of a commercial, legal relationship, between a Japanese company and a California LLC.  The first jurisdictional requirement is therefore satisfied.

The second jurisdictional requirement is also met here.  The subject matter of a state court proceeding "relates to" an arbitration agreement when the agreement "could conceivably affect the outcome of the plaintiff's suit."  *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133, 1135 (9th Cir. 2011).  This language confers "remarkably broad removal authority" and reflects Congress's intent that removal be "easy" under § 205.  *Id.* at 1138 n.5.  As the Ninth Circuit has stated:

> Federal courts will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all that is required to meet the low bar of "relates to."

*Id.* at 1138 (cleaned up).  Under this standard, an arbitration clause "conceivabl[y]" impacts the disposition of a case, when a defendant's assertion that the clause "provides a defense" is not "completely absurd or impossible."  Given this low bar, the sole remaining issue is whether it is "completely absurd or impossible" for MOL to argue the parties' dispute is covered.

7

When an arbitration provision states that it covers disputes "arising in connection with" the parties' agreement, a dispute is covered if its underlying facts "touch matters" covered by the agreement. *Simula, Inc. v. Automotiv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). This is so regardless of the label of the cause of action or how it is styled. *Id.*; *Jackson v. Amazon.com*, 65 F.4th 1093, 1102 (9th Cir. 2023). Doubts about whether this standard is met are to be resolved in favor of arbitrability. *Simula*, 175 F.3d at 721. The strong federal policy favoring arbitration applies with "special force in the field of international commerce." *Id.* at 720; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 640 (1985) (describing the importance of enforcing arbitration agreements to the system of international commerce and requiring the plaintiff "representative of the American business community to honor its bargain").

Here, the arbitration provision covers any dispute "arising out of or in connection with" the charter party. Dkt. No. 23-1 ¶ 47. Despite the breadth of this language, ACN argues that its claims are not covered because "nothing in ACN's First Amended Complaint turns on an interpretation of the Charter Parties." Dkt. No. 29 at 10–13 (calling the New York Convention a "red herring"). ACN's arguments cannot be squared with Ninth Circuit law. *See Simula*, 175 F.3d at 722-25.

In *Simula*, a plaintiff airbag system inventor sued a defendant automotive supplier for antitrust, trademark, federal and state trade-secret violations, and defamation. 175 F.3d at 719. The defendant moved to compel arbitration as a defense. *Id.* The inventor argued that its claims were separate tort claims that did not arise out of the agreement, and that even if they did, public policy should prevent enforcement of the arbitration agreement. *Id.* at 722–24. Rejecting this argument, the court held that each of the claims were arbitrable because they required interpretation of the underlying agreements, and because "without the . . . agreements, [it is unlikely that Plaintiff] would have ever dealt with [Defendant]." *Id.* at 722–25. The entire business relationship was dependent on the rights and obligations under the agreement. *Id.* at 725.

ACN raises many of the same arguments rejected in *Simula*. Like the inventor, ACN argues that: its claims are separate tort claims (Dkt. No. 29 at 13–14) ("ACN alleges that [the Charter Parties] were fraudulently induced and were void at the start . . . ."); its claims do not arise out of the agreement (*id.* at 12) ("ACN's Claims Are Not Covered by the Alleged Arbitration Agreements"); and even if its claims arise out of the agreement, public policy would preclude enforcement (*id.* at 7) ("Fundamental Public Polices Preclude Arbitration"). As in

*Simula*, analyzing the merits of ACN's claims will require looking at the terms of the underlying agreements. ACN's tort claims, whether labeled unfair business practices, false advertising, fraud, or misrepresentation, are all based in some way on ACN's being induced to enter into the agreements, chartering the vessels, and paying a contractually determined price. *See* Dkt. No. 1-1 ¶¶ 46, 57, 61, 82, 87, 91 (referencing purchase, price, payment, and amount charged as basis for the first, second, third, fourth, fifth, and sixth causes of action). And as in *Simula*, without the agreements, it is unlikely that ACN would have ever dealt with MOL, as their entire business relationship is dependent on the rights and obligations under the Charter Parties.

ACN's reliance on *Amazon v. Jackson* is misplaced. In *Jackson*, an Amazon Flex driver sued Amazon for monitoring his communications in closed Facebook groups. 65 F.4th at 1095. When Amazon raised an arbitration provision in the driver's employment agreement, the driver argued that the claims were not covered by that agreement. A divided panel held that the driver's claims did not require interpretation of the terms and conditions of employment but instead arose entirely outside the employment context. The majority concluded that the driver's claims existed independent from the employment agreement because Amazon could have monitored the driver's social-media communications even if he did not drive for Amazon Flex. In other words, the majority found that Amazon's conduct could have taken place regardless of its contractual relationship with the driver. The same cannot be said here, where the claims (e.g., price gouging and fraudulent inducement) require the existence—and analysis of—the Charter Parties. *Jackson* is thus distinguishable.[8]

Because the claims at issue in this case touch matters covered by the Charter Parties, they "relate to" the arbitration agreement, and because the agreement falls under the Convention, removal jurisdiction appears to be proper under § 205. Unwilling to concede this point, ACN raises two additional arguments. ACN contends that removal jurisdiction cannot be based on an affirmative defense and that the Court must separately have subject matter jurisdiction under § 203. Neither argument has merit.

---

[8] *Jackson* is also distinguishable in that it relied in part on the reasoning that arbitrability issues are to be decided on the face of the complaint alone. 65 F.4th at 1104. As explained below, this rule does not apply to agreements falling under the Convention. 9 U.S.C. § 205.

The first argument relies on a general jurisdictional principle that does not apply to the Convention. Section 205 states that removal under the Convention "need not appear on the face of the complaint but may be shown in the petition for removal." 9 U.S.C. § 205. This section "expressly abrogat[es] the well-pleaded complaint rule" and allows removal when a party raises an arbitration agreement as an affirmative defense. *Infuturia*, 631 F.3d at 1138 (cleaned up). The second argument has been squarely rejected by the Ninth Circuit. While ACN is correct that under the New York Convention, "a federal court must have both removal and subject matter jurisdiction to hear a case removed from state court," *id.* at 1135 n.1, jurisdiction under § 203 is "at least co-extensive with" jurisdiction under § 205, *Jones Day*, 42 F.4th at 1138. Facing the same argument, the Ninth Circuit reasoned that if § 203 jurisdiction were narrower than § 205, then a party could remove a case from state court only to argue that the federal court lacked jurisdiction, which would be an "absurd result" in light of Congress's intent to enforce international arbitration agreements. *Id.* at 1137. The Ninth Circuit then adopted the same jurisdictional standard for both § 203 and § 205. *Id.* at 1138 ("[W]e adopt the meaning of 'relates to,' which we previously defined for purposes of § 205.").

Accordingly, this Court has jurisdiction under the Convention.

D.

ACN next argues that even if this Court has jurisdiction, it should abstain from exercising it under *Younger* and remand the case. *Younger* abstention operates to prevent federal courts from interfering with pending state judicial proceedings. *Beltran v. State of California*, 871 F.2d 777, 781 (9th Cir. 1988). For the doctrine to apply, there must be an ongoing state action that both implicates important state interests and provides an adequate opportunity to raise federal questions. *Id.*

ACN argues that *Younger* abstention applies here because this federal action would interfere with ACN's "state court action." By "state court action," ACN is referring to the lawsuit that it originally filed in state court that was removed. *See* Dkt. No. 30 at 1 (defining ACN's "state court action" as the one that MOL removed). This argument is meritless. ACN's argument that this federal case (i.e., the removed case) would interfere with the state case (i.e., the removed case) is an argument that the case would interfere with itself. Of course, once a case has been removed, there is no separate "ongoing state action." *Georgia v. Rachel*, 384 U.S. 780, 797–98 n.27 (1966) ("After . . . removal is effected[,] state court proceedings

cease . . . ."); *Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 783 (7th Cir. 2008) ("Removal . . . simply does not leave behind a pending state proceeding that would permit *Younger* abstention."). If the flaw in the logic were not sufficiently obvious, the consequences of accepting the argument would surely leave no doubt—namely, every removed case would fall prey to *Younger* abstention, thereby defeating removal jurisdiction writ large. Thus, *Younger* abstention does not apply here. See *Turner v. Bank of Am. Home Loans*, No. 2:11-CV-465, 2011 WL 2532441, at *2 (D. Nev. June 24, 2011) (compiling cases and rejecting same argument), *aff'd,* 541 F. App'x 786 (9th Cir. 2013).

Accordingly, the motion to remand is denied.

### III.

Having concluded that this Court has jurisdiction, that no abstention doctrine applies, and that there is an arbitration agreement, the Court turns to the motion to compel arbitration.

### A.

Under the Federal Arbitration Act, district courts must compel arbitration of claims covered by an enforceable arbitration agreement. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022); 9 U.S.C. § 3. The Convention constitutes Chapter 2 of the FAA and adopts the procedures outlined in § 3. 9 U.S.C. § 208. "[A]ll doubts over the scope of an arbitration clause must be resolved in favor of arbitration," and "in light of the strong federal policy favoring arbitration in international commercial disputes." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 471 (9th Cir. 1991). A court will compel arbitration under the Convention when four factors are met:

(1) there is an agreement in writing within the meaning of the Convention;

(2) the agreement provides for arbitration in the territory of a signatory of the Convention;

(3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and

(4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009).

B.

The Court has already addressed ACN's arguments that the arbitration provision was superseded by amendment and that the claims do not relate to the agreement. ACN's remaining arguments in opposition to the motion to compel are that public policy precludes arbitration and that two nonsignatory Defendants cannot invoke the arbitration agreement.

1.

ACN argues that the arbitration agreement cannot be enforced against it because its lawsuit seeks public injunctive relief under the UCL for MOL's falsely advertising that it was committed to safety and charging a fair market price. Dkt. No. 1-1 at 19 & ¶ 34.

Under California law, arbitration agreements that prevent a plaintiff from seeking public injunctive relief in any forum are unenforceable. *McGill v. Citibank, N.A.*, 393 P.3d 85, 88 (Cal. 2017). For *McGill*'s rule to apply, the relief sought must be "prospective injunctive relief that aims to restrain future violations of law for the benefit of the general public as a whole, rather than a discrete subset of similarly situated persons." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542–43 (9th Cir. 2021) (defining the boundaries of public injunctive relief).

ACN's *McGill* argument fails for a number of reasons. First, ACN has not demonstrated that California law applies. ACN fails to address either MOL's argument that federal common law applies or the Ninth Circuit's holding to that effect. *See Setty v. Shrinivas Sugandhalaya LLP,* 3 F.4th 1166, 1168 (9th Cir. 2021) (holding that federal common law applies to the "threshold issue" whether claims are arbitrable under the New York Convention); *see also MouseBelt Labs Pte. Ltd. v. Armstrong*, No. 22-CV-04847, 2023 WL 3735997, at *6 (N.D. Cal. May 24, 2023) (applying *Setty* to all New York Convention claims). Even if federal common law does not apply, the Charter Parties contain a choice-of-law provision that designates English law as the "[g]overning [l]aw." Dkt. No. 23-1 ¶ 47. ACN does not explain how *McGill* could act a barrier to arbitrating disputes under an agreement governed by either federal common law or English law. Second, even if California law applied, *McGill* would not render the arbitration provision unenforceable because the agreement does not preclude ACN from

12

seeking public injunctive relief in arbitration (as was the case in *McGill*). *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021) (*McGill* invalidates contracts that bar public injunctive relief "in *both* court *and* arbitration.") (emphasis added). Moreover, ACN's request for a public injunction is not the kind of injunction contemplated by *McGill*. *See Hodges*, 21 F.4th at 543 (noting that "when the injunctive relief being sought is for the benefit of a discrete class of persons, or would require consideration of the private rights and obligations of individual non-parties, it has been held to be private injunctive relief"). Thus, public policy does not preclude the enforcement of the arbitration agreement.

2.

ACN next argues that only one of the three MOL entities, MOL Drybulk, Ltd., can invoke the arbitration agreement, and that the other two (Mitsui O.S.K. Lines and MOL (Americas) LLC), cannot because they are not signatories. MOL argues that equitable estoppel applies.

Equitable estoppel generally allows a nonsignatory to enforce the arbitration clause of an agreement against a signatory bringing claims against it when the claims rely on terms of the agreement.[9] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020) (holding domestic doctrines including equitable estoppel may apply to international arbitration agreements under the Convention). Under federal common law, equitable estoppel requires that the subject matter of the dispute be "intertwined with the contract providing for arbitration." *Id.* at 1169 (cleaned up). This standard is satisfied where a signatory "raises allegations of collusive

---

[9] The parties again dispute which law applies, but both cite *GE Energy* for the equitable-estoppel standard. ACN also cites to *Kramer v. Toyota Motor Corp.*, which applies a similar standard. 705 F.3d 1122, 1129 (9th Cir. 2013) ("[E]quitable estoppel applies . . . when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement") (cleaned up). Because the Ninth Circuit held that federal common law applies to threshold arbitrability determinations under the New York Convention in *Setty*, 3 F.4th at 1168 (which also involved equitable estoppel), this Court relies on federal common law, but the outcome would be the same under *Kramer*.

misconduct between the nonsignatory and other signatories." *MouseBelt*, 2023 WL 3735997, at *9 (surveying federal common law of equitable estoppel).

Here, the claims allege more than collusive misconduct—they allege unified, identical misconduct. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 13-cv-3349, 2014 WL 1395733, at *4 (N.D. Cal. Apr. 10, 2014) (compelling claims against four nonsignatory defendants to arbitration where complaint referred to all five defendants collectively as "NEC"). The FAC does not distinguish between Defendants at all, referring to them as "MOL" throughout. To allow ACN's case against two defendants to proceed while compelling its case against another defendant to arbitration—for the exact same conduct—would render the arbitration agreement ineffective and run contrary to the federal policy favoring arbitration, which applies with special force in the international commercial context. Accordingly, the Court holds that equitable estoppel applies here.

IV.

Because a valid arbitration agreement exists under the New York Convention, the Court DENIES the motion to remand, GRANTS the motion to compel arbitration, and DISMISSES the case without prejudice. *See Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (noting that a district court has discretion to dismiss rather than stay the complaint when an arbitration clause encompasses all the claims at issue).

Date: December 19, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge